## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**LLC ENERGOALLIANCE,**
**2/19 Simirenka Str.**
**Kyiv, Ukraine 03134**

      **Petitioner,**

  **v.**

**REPUBLIC OF MOLDOVA,**
**c/o Ministry of Justice of the Republic of Moldova**
**31 August 1989 Street No. 82**
**Chisinau, MD-2033**

      **Respondent.**

</td><td>

Civil Action No. **14-cv-1921**

</td></tr>
</table>

### PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

Petitioner, LLC Energoalliance, by and through its attorneys, Arnall Golden Gregory LLP, respectfully alleges and states as its Petition against Respondent, the Republic of Moldova, as follows:

### INTRODUCTION

1.   This is an action for recognition and enforcement of a foreign arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.A. 6997, 330 U.N.T.S. 3 (the "New York Convention"), as implemented in Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C. § 201 *et seq*. The arbitral award was rendered in favor of LLC Energoalliance ("Energoalliance") and against the Republic of Moldova ("Moldova") on October 25, 2013 by an arbitral tribunal seated in Paris, France.

2.   The New York Convention, at Article 3, obligates each contracting state to "recognize [foreign] arbitral awards as binding and enforce them in accordance with local

procedural law.  The United States recognizes and enforces "only those awards made in the territory of another Contracting State." 21 U.S.T. at 2566.  The arbitral award rendered in favor or Energoalliance was made in France, which is a party to the New York Convention, and thus the award is eligible for enforcement here.  Energoalliance seeks confirmation and enforcement of the arbitral award.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 9 U.S.C. § 203, 28 U.S.C. §§ 1330 & 1331, and 28 U.S.C. § 1602 *et seq.*

4.    The subject matter jurisdiction exists pursuant to 28 U.S.C. § 1330(a) to confirm arbitral award against a foreign state provided that a foreign state does not have immunity[1].

5.    Moldova is not entitled to immunity because it is a foreign state as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* and this case comes within 28 U.S.C. § 1605 (a)(6), which except from immunity actions to confirm an arbitral award governed by the New York Convention which provides for recognition and enforcement of arbitral awards and to which the United States is a party.

6.    Moldova is further not entitled to immunity under the implied waiver exception established under 28 U.S.C. § 1605 (a)(1) because it agreed to arbitration in France.  *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (citing S. Rep. No. 94-1310, at 18 (1976); H.R. Rep. No. 94-1487, at 18 (1976)), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617).

7.    The federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 and 9 U.S.C.

---

[1] "The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603 (a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a).

§ 203[2] because this is an action to confirm arbitration award issued under the New York Convention.

8.     This Court has personal jurisdiction over Moldova pursuant to the FSIA, which specifies that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction under" 1603(a) "where service has been made under" § 1608. 28 U.S.C. § 1330(b).

9.     Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.


## THE PARTIES

10.     Petitioner Energoalliance is a limited liability company organized in accordance with the laws of Ukraine.

11.     Respondent Moldova is a foreign state as defined in the FSIA, 28 U.S.C. § 1602 *et seq*.

## AGREEMENT TO ARBITRATE UNDER THE ENERGY CHARTER TREATY

12.     Both Ukraine and Moldova are signatories to the Energy Charter Treaty (the "ECT").  The ECT entered into force with respect to Ukraine on January 27, 1999 and with respect to Moldova on April 16, 1998.  A true and correct copy of the Energy Charter Treaty and the respective entry into force information are annexed as Exhibits A & C to the accompanying Declaration of Gene M. Burd (the "Burd Decl.").

13.     Both Ukraine and Moldova are "Contracting Parties" within the meaning of the

---

[2] "An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States … shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

6913614v2

ECT.

14.     Energoalliance is an Investor within the meaning of the ECT.

15.     Article 26 of the ECT provides, in relevant parts as follows:

ARTICLE 26
SETTLEMENT OF DISPUTES BETWEEN AN
INVESTOR AND A CONTRACTING PARTY

(1)  Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be resolved amicably.

(2)  If such disputes can not be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:

[. . .]

        (c) in accordance with the following paragraphs of this Article.

(3) (a) Subject only to paragraphs (b) and (c),[3] each Contracting Party hereby gives its unconditional assent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

[. . .]

(4)  In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to:

[. . .]

        (b) a sole arbitrator or ad hoc arbitration tribunal established under the Arbitration Rules of the United Nations Commission on International Trade Law (hereinafter referred to as "UNCITRAL")[.]

[. . .]

(5) (a) The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for:

[. . .]

        (ii) an "agreement in writing" for purposes of article II of the

---

[3] Paragraphs (b) and (c) relate to Annexes which Moldova did not join.

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, 10 June 1958 (hereinafter referred to as the "New York Convention"); and

(iii) "the parties to a contract [to] have agreed in writing" for the purposes of article 1 of the UNCITRAL Arbitration Rules.

(b) Any arbitration under this Article shall at the request of any party to the dispute be held in a state that is a party to the New York Convention. Claims submitted to arbitration hereunder shall be considered to arise out of a commercial relationship or transaction for the purposes of article I of that Convention.

(6) A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law.

[. . .]

(8) The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute. An award of arbitration concerning a measure of a sub-national government or authority of the disputing Contracting Party shall provide that the Contracting Party may pay monetary damages in lieu of any other remedy granted. Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.

16.     In 1999, Energoalliance became a party to a complex set of agreements, the end result of which was the supply of electricity from Ukraine to Moldtranselectro, a Moldovan state-owned entity.  When Moldtranselectro failed to make payments for the supplied electricity, Energoalliance acquired the debts and attempted to collect them in the Moldovan courts.  During the course of protracted court proceedings, Moldova breached its obligations under the ECT in numerous respects, such that Energoalliance was denied the benefits of its investment in Moldova.

17.     On May 12, 2010, as required by the relevant provisions of the ECT, Energoalliance sent a request for amicable resolution of the dispute to Moldova but received no response.

18.     On July 8, 2010 and August 18, 2010, Energoalliance issued notices of arbitration to Moldova requesting an ad hoc arbitration in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL") pursuant to Article 26(4)(b) of the ECT. *See* Decl. of Viacheslav Lych (the "Lych Decl.") at ¶ 14 and Exs. E & F, respectively.

19.     An ad hoc arbitral tribunal was constituted in accordance with Article 26 of the ECT and the UNCITRAL Arbitration Rules, and, following a full exchange of written evidence and pleadings, an arbitral hearing took place in Paris, France from July 4-6, 2012. At the hearing, both parties presented their arguments and evidence to the arbitral tribunal.

20.     The arbitral tribunal issued the final Arbitral Award on October 23, 2013 (the "Award").  A certified copy of the Award in the original Russian is annexed to the Lych Declaration as Exhibit A, while a certified translation of the Award is annexed as Exhibit B to the Lych Declaration.

21.     In the Award, the arbitral tribunal concluded that Moldova breached its obligations to Energoalliance under the ECT in several respects, including by issuing a decree stripping Moldtranselectro of its assets and transferring them to other entities, and by engaging in quasi-judicial ex-parte proceedings which provided the Moldovan courts with the purported grounds to deny Energoalliance's claims.

22.     Accordingly, the arbitral tribunal held that Moldova breached its obligation to "create stable, equitable, favourable and transparent conditions" with regard to the Energoalliance's investment and to ensure that the Energoalliance's investment enjoys "fair and equitable treatment" as required by Article 10(1) of the ECT.

23.     As a result of Moldova's breaches, the arbitral tribunal ordered Moldova to pay

Energoalliance the following amounts:

    a.   MLD 195,547,212 (one hundred ninety-five million, five hundred forty-seven thousand, two hundred and twelve Moldovan Lei) as the amount of Energoalliance's lost investment;

    b.   MLD 357,916,008 (three hundred fifty-seven million, nine hundred sixteen thousand and eight Moldovan Lei) as interest for the period up to May 31, 2012;

    c.   MLD 39,417,175 (thirty-nine million, four hundred seventeen thousand, one hundred seventy five Moldovan Lei) as interest for the period between June 1, 2012 and the date of the award;

    d.   $ 200,000 (two hundred thousand United States Dollars) as Energoalliance's attorneys' fees in arbitration;

    e.   $ 340,000 (three hundred forty thousand United States Dollars) as arbitration costs.

24.    On October 25, 2013, a copy of the decision was delivered to Moldova's arbitration counsel by courier. *See* Lych Decl. at ¶ 17 and Ex. G.

25.    Article 26(8) of the ECT provides that "The awards of arbitration . . . shall be final and binding upon the parties to the dispute."

26.    Article 34.2 of the UNCITRAL Arbitration Rules, entitled "Form and Effect of the Award," provides: "[a]ll awards shall be made in writing and shall be final and binding on the parties." Burd Decl. at ¶ 10 at Ex. F.

27.    Article III of the New York Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding..."

28.    On or about November 25, 2014, Moldova initiated proceedings in the Paris Court of Appeal seeking to set aside the Award on grounds similar to those which it unsuccessfully pursued in the arbitral proceedings. Lych Decl. at ¶ 18. Moldova has not sought a stay of enforcement proceedings while that action is pending, and no stay has been entered by the Court of Appeal. *Id*

29.     The Award is binding and enforceable notwithstanding the pending action before the Paris Court of Appeal.

30.     Pursuant to the Convention, District of Columbia Code § 15-108 and the terms of the Award, Energoalliance is entitled to prejudgment interest, calculated at an appropriate rate, on the Award amount.

WHEREFORE, Petitioner Energoalliance respectfully requests that this Court, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. §§ 201 *et seq*., enter an Order:

1.     Confirming the aforementioned Award and granting judgment in favor of Energoalliance and against Moldova in the amount of:

    a.  MLD 195,547,212 (one hundred ninety-five million, five hundred forty-seven thousand, two hundred and twelve Moldovan Lei) as the amount of Energoalliance's lost investment;

    b.  MLD 357,916,008 (three hundred fifty-seven million, nine hundred sixteen thousand and eight Moldovan Lei) as interest for the period of June 1, 2012 to the date of the award;

    c.  MLD 39,417,175 (thirty-nine million, four hundred seventeen thousand, one hundred seventy five Moldovan Lei) as interest for the period between June 1, 2012 and the date of the award;

    d.  US$ 200,000 (two hundred thousand United States Dollars) as Energoalliance's attorneys' fees in arbitration;

    e.  US$ 340,000 (three hundred forty thousand United States Dollars) as arbitration costs.

2.     Awarding Energoalliance pre-judgment interest at the statutory rate from the date of the Award to the date of entry of judgment.

3.     Awarding Energoalliance post-judgment interest at the statutory rate from the date of entry of judgment to the date the judgment is satisfied in full.

4.     Awarding Energoalliance its costs and attorneys' fees in this proceeding.

5.      Awarding Energoalliance such other relief as the Court considers just and proper,

including, as appropriate, the posting of security.

Dated: November 14, 2014

By:  /s/ Gene M. Burd
     Gene M. Burd      (D.C. Bar No. 1004330)
     ARNALL GOLDEN GREGORY LLP
     1775 Pennsylvania Ave., NW
     Suite 1000
     Washington, DC  20006
     Telephone:  202.677.4048
     Facsimile:  202.677.4049
     gene.burd@agg.com

     *Attorneys for Petitioner*
     *LLC Energoalliance*

Of counsel:

Glenn P. Hendrix (*pro hac vice pending*)
Georgia Bar No. 346950
Arnall Golden Gregory LLP
171 17th Street NW
Suite 2100
Atlanta, GA 30363
glenn.hendrix@agg.com

Eric D. Olson (*pro hac vice pending*)
Virginia Bar No. 80766
District of Columbia Bar No. 1004365
1775 Pennsylvania Ave., NW
Suite 1000
Washington, DC  20006
eric.olson@agg.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**LLC ENERGOALLIANCE,**

                    **Petitioner,**

          **v.**

**REPUBLIC OF MOLDOVA,**

                    **Respondent.**

**Civil Action No.   14-cv-1921**

**[PROPOSED] ORDER GRANTING PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Upon consideration of the petition and any response thereto, it is this _____ day of

_____, 2014,

ORDERED, that the Petition to Confirm Foreign Arbitral Award is GRANTED. It is

further

ORDERED, that the Arbitral Award entered on October 25, 2013 is CONFIRMED.


_____
United States District Judge

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

LLC ENERGOALLIANCE,

                        Petitioner,

    v.

REPUBLIC OF MOLDOVA,

                        Respondent.

Civil Action No. **14-cv-1921**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO CONFIRM ARBITRAL AWARD

Petitioner, LLC Energoalliance ("Energoalliance"), by and through its attorneys, Arnall Golden Gregory LLP, respectfully submits this Memorandum of Points and Authorities in support of its Petition to Confirm Foreign Arbitral Award against the Republic of Moldova ("Moldova").

## I.   INTRODUCTION

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), Energoalliance is entitled to an order and judgment confirming a foreign arbitral award it obtained against Moldova. An *ad hoc* arbitral tribunal established under the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules pursuant to the relevant provisions of the Energy Charter Treaty ("ECT") held a fully contested arbitration hearing from July 4-6, 2012 in Paris, France. This duly constituted arbitral tribunal rendered its decision on October 25, 2013, awarding Energoalliance approximately $40.3 million at current exchange rates in damages, interest, and costs (the "Award").  To date, Moldova has refused to pay any part of the Award. An order and judgment

should be promptly entered to permit Energoalliance to enforce its Award in the United States.

## II.   FACTUAL BACKGROUND

### A.   The Energy Charter Treaty

This investment dispute between Energoalliance, a Ukrainian company, and Moldova has arisen under the ECT, an international convention signed in 1994 in an effort to build a legal foundation for energy security, based on the principles of open, competitive markets and sustainable development.  *See* Declaration of Gene M. Burd (the "Burd Decl.") at ¶¶ 5-7 and Exhibits A-C (copies of the ECT and the entry into force information, respectively).  *Id.* at ¶ 6, Ex. B at p. 13.  To date, the ECT has been signed or acceded to by fifty-two states, the European Community and Euratom.  *Id.* at ¶ 7, Ex. C.  Both Ukraine and Moldova are signatories to the ECT.  *Id.* at ¶ 7, Ex. C.  The ECT entered into force with respect to Ukraine on January 27, 1999 and with respect to Moldova on April 16, 1998.  *Id.* By accepting the ECT, contracting parties took on the obligation to extend national treatment, or most-favored nation treatment (whichever is more favorable), to nationals and legal entities of other contracting parties who have invested in its energy sector.  *Id.* at ¶ 6, Ex. B at p. 14.   The ECT also established dispute resolution procedures for cases of investment-related disputes between an investor and a contracting party set forth in Article 26, which provide, in relevant part, as follows:

ARTICLE 26
SETTLEMENT OF DISPUTES BETWEEN AN
INVESTOR AND A CONTRACTING PARTY

(1)  Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be resolved amicably.

(2)  If such disputes cannot be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:

[. . .]

(c) in accordance with the following paragraphs of this Article.

(3) (a) Subject only to paragraphs (b) and (c),[1] each Contracting Party hereby gives its unconditional assent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

[. . .]

(4) In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to:

[. . .]

(b) a sole arbitrator or ad hoc arbitration tribunal established under the Arbitration Rules of the United Nations Commission on International Trade Law (hereinafter referred to as "UNCITRAL")[.]

[. . .]

(5) (a) The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for:

[. . .]

(ii) an "agreement in writing" for purposes of article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, 10 June 1958 (hereinafter referred to as the "New York Convention"); and

(iii) "the parties to a contract [to] have agreed in writing" for the purposes of article 1 of the UNCITRAL Arbitration Rules.

(b) Any arbitration under this Article shall at the request of any party to the dispute be held in a state that is a party to the New York Convention. Claims submitted to arbitration hereunder shall be considered to arise out of a commercial relationship or transaction for the purposes of article I of that Convention.

(6) A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law.

[. . .]

(8) The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute. An award of

---

[1] Paragraphs (b) and (c) relate to Annexes which Moldova did not join.

arbitration concerning a measure of a sub-national government or authority of the disputing Contracting Party shall provide that the Contracting Party may pay monetary damages in lieu of any other remedy granted. Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.

Art. 26, ECT (Burd Decl. at ¶ 5 at Ex. A).

### B.     The Dispute Between Energoalliance and Moldova

The dispute at issue relates to Energoalliance's investment in the energy sector of Moldova. *See* Declaration of Viacheslav Lych (the "Lych Declaration") at ¶¶ 5-8. In 1999, Energoalliance became a party to a complex transaction, the end result of which was the supply of electricity from Ukraine to Moldtranselectro, a Moldovan state-owned entity. *Id.* at ¶¶ 5-7. When Moldtranselectro failed to make payments for the supplied electricity, Energoalliance acquired the debt. *Id.* at ¶ 8. However, in breach of its obligations under the ECT, Moldova engaged in conduct preventing Energoalliance from collecting the debt such that Energoalliance was denied the benefits of its investment in Moldova. *Id.* at ¶¶ 9-12.

On May 12, 2010, as required by the relevant provisions of the ECT, Energoalliance sent a request for amicable resolution of the dispute to Moldova but received no response. *Id.* at ¶ 13 and Ex. D. On July 8, 2010 and August 18, 2010, Energoalliance issued notices of arbitration to Moldova (*Id.* at ¶ 14 and Exs. E & F) requesting an ad hoc arbitration be conducted in accordance with the UNCITRAL Arbitration Rules pursuant to Article 26(4)(b) of the ECT.

### C.     The Arbitration Award

An *ad hoc* arbitral tribunal was constituted in accordance with Article 26 of the ECT and the UNCITRAL Arbitration Rules, and, following a full exchange of written evidence and pleadings, an arbitral hearing took place in Paris, France from July 4-6, 2012. *See* Lych Decl. at ¶ 14. At the hearing, both parties, through counsel, presented their arguments and evidence to the

- 4 -

arbitral tribunal.  *Id.*  The arbitral tribunal issued the final Arbitral Award on October 25, 2013 (the "Award").  *Id.* at ¶ 15 at Exs. A & B (Arbitral Award and certified English translation thereof).[2]

In its lengthy and carefully-reasoned opinion, the tribunal found that Moldova breached the ECT by issuing a decree stripping Moldtranselectro's assets and transferring them to other entities in order to place them beyond the reach of Energoalliance, as well as by engaging in quasi-judicial *ex parte* proceedings which provided Moldovan courts with purported grounds to deny Energoalliance's claims.  *Id.* at ¶¶ 10-11, 15 and Ex. B at ¶¶ 346 & 356.  The arbitral tribunal concluded that these acts were in violation of Moldova's obligation to "create stable, equitable, favourable and transparent conditions" with regard to the Energoalliance's investment and to ensure that the Energoalliance's investment enjoys "fair and equitable treatment" as required by Article 10(1) of the ECT.  *Id.* at ¶ 15.

As a result of the Moldova's breaches, the arbitral tribunal ordered Moldova to pay Energoalliance the following amounts:

     a.   MLD 195,547,212 (one hundred ninety-five million, five hundred forty-seven thousand, two hundred and twelve Moldovan Lei) as the amount of Energoalliance's lost investment;

     b.   MLD 357,916,008 (three hundred fifty-seven million, nine hundred sixteen thousand and eight Moldovan Lei) as interest for the period up to May 31, 2012;

     c.   MLD 39,417,175 (thirty-nine million, four hundred seventeen thousand, one hundred seventy five Moldovan Lei) as interest for the period between June 1, 2012 and the date of the award;

     d.   $ 200,000 (two hundred thousand United States Dollars) as Energoalliance's attorneys' fees in arbitration;

     e.   $ 340,000 (three hundred forty thousand United States Dollars) as arbitration costs.

---

[2] Exhibit B shall hereinafter be referred to as the "Award."

*Id.* at ¶ 15 and Ex. B at ¶¶ 413, 422, 427, 424, & 435 (summarized at ¶ 436). The Award was confirmed and a writ of execution (an *Exequatur*) was issued by the High Court of Paris. *Id.* at ¶ 16 and Exs. A & C (Arbitral Award including *Exequatur* and certified translation of the *Exequatur*).

### D. Moldova's Failure to Pay the Award

The chair of the arbitral tribunal sent a letter dated October 25, 2013 to Energoalliance which stated that a copy of the decision was delivered to both Energoalliance's and Moldova's arbitration counsel by courier on the same day. Lych Decl. at ¶ 17 and Ex. G. Although Article 26(8) of the ECT provides that "The awards of arbitration . . . shall be final and binding upon the parties to the dispute" (Burd Decl. at Ex. A) and Article 34.2 of the UNCITRAL Arbitration Rules, entitled "Form and Effect of the Award," provides "[a]ll awards . . . shall be final and binding on the parties," (*Id.* at Ex. F). Moldova has failed to pay any of the Award amounts. Lych Decl. at ¶ 20.

On November 25, 2013, Moldova filed an application with the Paris Court of Appeal seeking to set aside the Award based on substantially the same arguments Moldova unsuccessfully raised during the arbitration proceedings. *Id.* at ¶ 18. Moldova has not sought a stay of enforcement proceedings while that action is pending, and no stay has been entered by the Paris Court of Appeal. *Id.*

On April 15, 2014, Energoalliance sent a letter to Moldova seeking voluntary compliance with the Award. *Id.* at ¶ 19 and Ex. H. However, on August 5, 2014, Moldova rejected Energoalliance's request, making this petition necessary. *See id.* at ¶ 20 and Ex. I.

## III.   ARGUMENT

The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *See Yusuf Ahmed Alghanim &*

*Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).  The review of arbitration awards is extremely limited.  *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 506 (2001); *Kurke v. Oscar Gruss and Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006).  Under the New York Convention, this Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." The Award should be confirmed because (i) this Court has subject matter jurisdiction over this action and personal jurisdiction over Moldova; and (ii) Federal Arbitration Act requires confirmation of an award issued under the New York Convention.

## A.    Jurisdiction and Venue

This Court has jurisdiction over the subject matter of this action pursuant to 9 U.S.C. § 203, 28 U.S.C. §§ 1330 & 1331, and 28 U.S.C. § 1602 et seq.  This Court has personal jurisdiction over Moldova pursuant to 28 U.S.C. § 1330(b).  Venue is proper in this district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

### 1.    This Court Has Subject Matter Jurisdiction Over This Action

This Court has subject matter jurisdiction over this case because: (i) pursuant to 28 U.S.C. § 1330(a) district court has jurisdiction to confirm arbitral award against a foreign state provided that a foreign state is excepted from immunity under the applicable provisions of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*; and (ii) 28 U.S.C. § 1331 and 9 U.S.C. § 203 grant jurisdiction for actions to confirm arbitration award issued under the New York Convention.

#### a.    Subject Matter Jurisdiction Under the Foreign Sovereign Immunity Act

Title 28 U.S.C. § 1330(a)[3] grants jurisdiction to confirm arbitral award against a foreign

---

[3]        The district courts shall have original jurisdiction without regard to amount in

state provided that a foreign state is not entitled to immunity under the FSIA.  Here, Moldova is not entitled to immunity because of (i) the arbitration exception pursuant to 28 U.S.C. § 1605 (a)(6); and (ii) the implied waiver exception pursuant to 28 U.S.C. § 1605 (a)(1).

Title 28 U.S.C. § 1605 (a)(6) grants an exception to immunity when an action is brought to confirm an arbitral award, made pursuant to an agreement to arbitrate made by the foreign state for the benefit of a private party, and the agreement governed by a treaty in force for the United States calling for the recognition and enforcement of arbitral awards.[4]

Moldova has acceded to the ECT, which provides for arbitration of disputes of the nature that gave rise to the arbitration between Energoalliance and Moldova, as well as for the recognition and enforcement of awards resulting from such arbitrations.  *See* Burd Decl. at ¶ 5 at Ex. A.  Art. 26 of the ECT specifically required Moldova to submit to arbitration under the UNCITRAL Arbitration Rules.  *Id.*  The agreement to arbitrate was formed when Energoalliance consented to the arbitration with Moldova by issuing a dispute resolution notice on May 12, 2010.  *See* Lych Decl. at ¶ 13.  As discussed below, the Award issued by the tribunal in Paris, France was made under the New York Convention, to which the United States is a party, and

---

controversy of any nonjury civil action against a foreign state as defined in section 1603 (a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330 (a).

[4]     A foreign state shall not be immune from the jurisdiction of courts of the United States … in any case … in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if … the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards…

28 U.S.C. § 1605 (a)(6).

which calls for the recognition and enforcement of arbitral awards.

Accordingly, jurisdiction is proper under 28 U.S.C. § 1330(a) because Moldova is excepted from immunity under the arbitration exception at 28 U.S.C. § 1605 (a)(6) to confirm an arbitration award issued pursuant to the New York Convention. *See FG Hemisphere Assocs. LLC v. Democratic Republic of Congo*, 637 F.3d 373, 375 (D.C. Cir. 2011) ("[arbitration exception] permits a plaintiff to bring suit against a sovereign "to confirm an award made pursuant to . . . an agreement to arbitrate").

Moldova is further not entitled to immunity under the implied waiver exception under 28 U.S.C. § 1605(a)(1) because it agreed to arbitration in France. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (citing S. Rep. No. 94-1310, at 18 (1976); H.R. Rep. No. 94-1487, at 18 (1976)), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617). The FSIA's legislative history indicates that implied waivers may be found "in cases where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract." H.R.Rep. No. 94–1487, at 18 (1976). Here Moldova has agreed to arbitrate and fully participated in the arbitration in Paris, France. Accordingly, the implied waiver exception pursuant to 28 U.S.C. § 1605(a)(1) applies and subject matter jurisdiction exists under 28 U.S.C. § 1330(a).

b.      Federal Question Jurisdiction

The federal question jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203 because this is an action to confirm arbitration award issued under the New York Convention.[5]

---

[5] "An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States … shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203.

2.      This Court Has Personal Jurisdiction Over Moldova

The FSIA specifies that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction under" 1603(a) "where service has been made under" 28 U.S.C. § 1608.  28 U.S.C. § 1330(b).  In other words, "under the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction.'" *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C. Cir. 2012) quoting *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002). Furthermore, Moldova is a foreign sovereign and therefore not a person under the Due Process Clause of the Fifth Amendment and, thus, has no right to assert a personal jurisdiction defense. *Id.* at 809.

3.      Venue in This Court is Proper

Title 28 U.S.C. § 1391(f)(4) which provides that a civil action against a foreign state may be brought in this district and confers venue in this Court.

**B.      The Award Against Moldova Was Made Under the New York Convention**

The Award falls under the New York Convention because the Award was made in France and Moldova and Energoalliance consented to the dispute resolution procedure set forth in the ECT which provides for the application of the New York Convention.

The New York Convention applies to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement are sought.  *See* Art. I(1), New York Convention.  Energoalliance seeks recognition in the United States of the Award, which was made in France, which meets the requirements of Article I(1), as both the United States and France are parties to the New York Convention. *See* Burd Decl. at Ex. E.

The New York Convention obligates contracting states to recognize an "agreement in

writing" under which the parties agreed to submit to arbitration.  *See id.* Decl. at Ex. D Art. II(1), New York Convention.  In that regard, the ECT provides that the requirement of an "agreement in writing" for purposes of the New York Convention is satisfied by the unconditional consent of each Contracting Party to submit to dispute resolution procedures set forth in the ECT, on the one hand, and written consent of the Investor to submit the dispute for resolution under the provisions of the ECT, on the other.  *See Id.* at Ex. A, Art. 26(3)-(5).

Moldova, as a signatory to the ECT and the State with respect to which the ECT entered into force, is a Contracting Party within the meaning of the ECT.  As such, Moldova gave its unconditional consent to submit to international arbitration in accordance with the ECT.  *See Id.* at Art. 26(3)(a).  Energoalliance is an Investor within the meaning of the ECT.  *See* Lych Decl. at Ex. B, ¶¶ 142-159.  By issuing a notice of initiating ECT dispute resolution procedure on May 12, 2010, Energoalliance, as the Investor, consented to arbitration under the UNCITRAL Arbitration Rules.  *See* Burd Decl. at Ex. A, Art. 26(4)(b).  Taking together, the consent given by Moldova in the ECT and the consent given by Energoalliance in the May 12, 2010 notice constitute an "agreement in writing" for the purposes of the New York Convention.  *Id.*, Art. 5(a)(ii).

Furthermore, the Award falls under the New York Convention because it has arisen out of a set of commercial agreements involving Energoalliance.  *See* 9 U.S.C. 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract or agreement . . . falls under the Convention."); *see also Azhar Ali Khan v. Parsons Global Servs., Ltd.*, 428 F.3d 1079, 1082 (D.C. Cir. 2005)("[T]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards … provides federal jurisdiction in matters involving an arbitration agreement arising out

of a commercial relationship where one party to the agreement is not a United States citizen.");

*DRC, Inc. v. Republic of Hond.*, 2014 U.S. Dist. LEXIS 151090 (D.D.C. Oct. 23, 2014) ("That a

government is a party to a transaction does not destroy its commercial character; indeed, the fact

that an agreement to arbitrate is in the contract between a government and a private person may

confirm its commercial character . . .").

      C.      **The New York Convention Requires Recognition of the Award Against Moldova**

Title 9 U.S.C. § 207 requires confirmation of the award issued under the New York

Convention unless one of the grounds for refusal applies.[6]  Article III of the New York

Convention provides, in relevant part, that "[e]ach Contracting State shall recognize arbitral

awards as binding and enforce them in accordance with the rules of procedure of the territory

where the award is relied upon. . ."  *See* Burd Decl. at Ex. D at Art. III. Congress has enacted 9

U.S.C. § 201 *et seq.*, to implement the New York Convention.  *See* 9 U.S.C. § 201 (New York

Convention "shall be enforced in United States courts in accordance with this chapter."); *see also*

*Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 324 (D.C. Cir. 2014)("The

Convention is a multilateral treaty that, with exceptions, obligates participating countries to

honor international commercial arbitration agreements and to recognize and enforce arbitral

awards rendered pursuant to such agreements.") (citations omitted) (citing S. Exec. Rep. No. 10,

at 3-4 (1968) and testimony of Amb. Richard D. Kearney, Office of the Legal Adviser, Dep't of

State").  Accordingly, the Award against Moldova should be confirmed.

**IV.**      **CONCLUSION**

Accordingly, pursuant to the New York Convention and 9 U.S.C. § 207, the Court should

---

[6] None of the grounds for refusal set forth in Article V of the New York Convention apply to this case and the burden of proof rests on the party challenging the award. *Compagnie Des Bauxites de Guinee v. Hammermills, Inc.*, 1992 WL 122712, at *3 (D.D.C.May 29, 1992).

enter an Order confirming the Award in the following amounts:

    a.   MLD 195,547,212 (one hundred ninety-five million, five hundred forty-seven thousand, two hundred and twelve Moldovan Lei) as the amount of Energoalliance's lost investment;

    b.   MLD 357,916,008 (three hundred fifty-seven million, nine hundred sixteen thousand and eight Moldovan Lei) as interest for the period up to May 31, 2012;

    c.   MLD 39,417,175 (thirty-nine million, four hundred seventeen thousand, one hundred seventy five Moldovan Lei) as interest for the period between June 1, 2012 and the date of the award;

    d.   $ 200,000 (two hundred thousand United States Dollars) as Energoalliance's attorneys' fees in arbitration;

    e.   $ 340,000 (three hundred forty thousand United States Dollars) as arbitration costs.

Additionally, Energoalliance requests that the Court award prejudgment interest on the foregoing sums; as parties are generally entitled to prejudgment interest on the award from the date of the award through the date of entry of judgment by the court. *E.g. Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, Civ. No. 90-0169, 1992 U.S. Dist. LEXIS 8046 at *26 (D.D.C. May 29, 1992) ("Courts have consistently allowed prejudgment interest in actions brought to confirm arbitral awards." (quoting *Reefer Express Lines Pty., Ltd. v. Gen. Auth. For Supply Commodities*, 714 F. Supp 699, 699 (S.D.N.Y. 1989))); *see also* D.C. Code § 15-108. Accordingly, Energoalliance is entitled to prejudgment and postjudgment interest on the Award.

For the foregoing reasons, petitioner Energoalliance respectfully requests that this Court enter an Order confirming the Award and enter judgment thereon.

Dated: November 14, 2014

By: /s/ Gene M. Burd

Gene M. Burd      (D.C. Bar No. 1004330)
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave., NW
Suite 1000
Washington, DC  20006
Telephone:   202.677.4048
Facsimile:    202.677.4049
gene.burd@agg.com

*Attorneys for Petitioner*
*LLC Energoalliance*

Of counsel:

Glenn P. Hendrix (*pro hac vice pending*)
Georgia Bar No. 346950
Arnall Golden Gregory LLP
171 17th Street NW
Suite 2100
Atlanta, GA 30363
glenn.hendrix@agg.com

Eric D. Olson (*pro hac vice pending*)
Virginia Bar No. 80766
District of Columbia Bar No. 1004365
1775 Pennsylvania Ave., NW
Suite 1000
Washington, DC  20006
eric.olson@agg.com