UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LLC ENERGOALLIANCE,

        *Petitioner,*

v.

THE REPUBLIC OF MOLDOVA,

        *Respondent.*

Civil Action No. 1:14-cv-01921-CRC

## DECLARATION OF BENOIT LEBARS

I, Benoit LeBars, declare as follows:

1. I am over 18 years of age and am an attorney admitted to the Paris Bar.

2. I represent LLC Komstroy, a Ukrainian company ("Komstroy") before the Paris Court of Appeal in the proceedings initiated by the Republic of Moldova to set aside the arbitral award issued in Paris on October 25, 2013. The award was issued by an *ad hoc* arbitral tribunal formed in accordance with the Arbitration Rules of the United Nations Commission for International Trade Law ("UNCITRAL"). The award was issued against the Republic of Moldova and in favor of LLC Energoalliance, another Ukrainian company ("Energoalliance"). Komstroy is a successor in interest of Energoalliance.

3. I have been representing Komstroy since May 2015 and make this Declaration to the best of my knowledge, information and belief.

### I. PROFESSIONAL BACKGROUND

4. I am the co-founder and managing partner of Lazareff LeBars, a law firm in Paris, France. The firm specializes in international dispute resolution. Our team advises clients in complex disputes in the context of institutional and *ad hoc* arbitration, litigation and alternative dispute resolution. The firm is also recognized for both intellectual property and class action litigations.

5. My personal expertise is in international corporate law, international trade law, international contracts arbitration and alternative dispute resolution. I acted as counsel or arbitrator in 26 international arbitral disputes. I hold a particular interest in the business development of Africa, and acquired as a consequence specific expertise in OHADA

law.[1] This has led the firm's practitioners to handle matters in more than 40 countries in Africa, to date.

6. I hold a PhD in private law from the Sorbonne University Law School and am a professor of law in the United States, at the Vermont Law School, and in France, at the Sorbonne and Cergy Universities, where I teach international arbitration, international commerce law and comparative corporation law.

7. I published several books notably in international business law, international trade law, international corporation law and in OHADA international arbitration and corporate law, as well as numerous articles.

8. I had the opportunity to act as expert on French law in the context of mergers (legal opinions), litigation procedures in Great Britain and in arbitration cases.

## II.   APPLICABLE FRENCH LAW AND PROCEDURE FOR THE ENFORCEMENT AND ANNULMENT OF ARBITRAL AWARDS

### A. Enforcement Proceedings

9. Enforcement of an arbitral award issued in France requires obtaining an *exequatur* of the award. This must usually be requested from the relevant *Tribunal de grande instance* (the court of first instance).[2]

10. Proceedings to obtain an exequatur before the *Tribunal de grande instance* are nonadversarial. Alternatively, the exequatur may be sought from the Court of Appeal while a request for annulment of the arbitral award has already been made (proceedings are then adversarial).[3]

---

[1] The Organisation for the Harmonisation of Business Law in Africa ("OHADA") is an international organization regrouping seventeen African Member States. Through the harmonization of legal norms, it aims to increase trade and investment, and ensure private actors are legally and judicially protected in the Member State in which they lead their activity. Its ultimate objective is the creation of single market for the economical development of the continent.

[2] Code of Civil Procedure, Article 1516: "An arbitral award may only be enforced by virtue of an enforcement order (*exequatur*) issued by the *Tribunal de grande instance* of the place where the award was made or by the *Tribunal de grande instance* of Paris if the award was made abroad. (…)"

[3] Code of Civil Procedure, Article 1521: "The first president or, once the matter is referred to him or her, the judge assigned to the case (*conseiller de la mise en état*) may grant enforcement (*exequatur*) of the award."

11. *Exequatur* is granted when the court is provided with the original versions of the arbitral award and the arbitral agreement or their certified copies, and their translation if needed[4]. If these formal requirements are met, the court will refuse enforcement on the merits only if the award or its enforcement is contrary to French international public policy[5].

12. *Exequatur* takes the form of a note on the award or the certified copy provided. If the *exequatur* is granted, no reasons need to be given by the court.

13. Once the *exequatur* is granted to an award issued in France, enforceable measures become immediately available.

### B. Set-Aside Proceedings

14. The only remedy for a party contesting an award issued in France is to request annulment of the award before the relevant Court of appeal[6] within a month after it was notified[7].

15. Annulment in French courts will be ordered on five limited grounds[8]:

    - the arbitral tribunal wrongly upheld or declined jurisdiction;
    - the arbitral tribunal was not properly constituted;
    - the arbitral tribunal ruled without complying with the mandate conferred upon it;
    - due process was violated; or
    - recognition or enforcement of the award is contrary to international public policy.

---

[4] Code of Civil Procedure, Article 1515: "The existence of an arbitral award shall be proven by producing the original award, together with the arbitration agreement, or duly authenticated copies of such documents. If such documents are in a language other than French, the party applying for recognition or enforcement shall produce a translation. The applicant may be requested to provide a translation by a translator whose name appears on a list of court experts or a translator accredited by the administrative or judicial authorities of another Member State of the European Union, a Contracting Party to the European Economic Area Agreement or the Swiss Confederation."

[5] Code of Civil Procedure, Article 1514: "An arbitral award shall be recognized or enforced in France if the party relying on it can prove its existence and if such recognition or enforcement is not manifestly contrary to international public policy."

[6] Code of Civil Procedure, Article 1518: "The only means of recourse against an award made in France in an international arbitration is an action to set aside."

[7] Code of Civil Procedure, Article 1519: "An action to set aside shall be brought before the Court of Appeal of the place where the award was made. Such recourse can be had as soon as the award is rendered. If no application is made within one month following notification of the award, recourse shall no longer be admissible. The award shall be notified by service (signification), unless otherwise agreed by the parties."

[8] Code of Civil Procedure, Article 1520.

These grounds are more restrictive than the grounds provided for by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. French Courts give great deference to the arbitration process and the awards are set aside very rarely. This is particularly true in cases, such as the instant case, where the appealing party does not propound new arguments but reiterates arguments raised and rejected by the arbitrators.

16. As a matter of French law, the award is considered to be issued by the arbitral tribunal. Article 1513 provides: *"Unless the arbitration agreement provides otherwise, the award shall be made by majority decision. It shall be signed by all the arbitrators. However, if a minority among them refuses to sign, the others shall so state in the award."* Accordingly, the fact that one of the arbitrators in the Energoalliance and Moldova arbitration dissented from the majority of the arbitral tribunal is irrelevant. The Award is in full force and effect despite the dissent.

17. Annulment proceedings do not suspend enforcement where the *exequatur* has been granted. However, a party may seek a stay if enforcement may seriously undermine its rights[9].

## III.   PROCEDURAL HISTORY BEFORE THE PARIS COURT OF APPEAL

### A. Proceedings On The Merits

18. The *ad hoc* arbitral tribunal appointed by the parties rendered the final award on October 25, 2013 by which it notably ordered the Republic of Moldova to pay MLD 195,547,212 plus interests to Energoalliance.

19. On November 25, 2013, the Republic of Moldova made a formal application for the setting aside of the award to the Paris Court of Appeal. The Republic of Moldova was represented by the law firms DLA Piper UK LLP and Lissarrague-Dupuis-Boccon-Gibod SCP.

20. Moldova submitted the statement of claim to the Court on April 25, 2014. Energoalliance submitted its response on August 22, 2014. In turn, Moldova submitted its reply on December 15, 2014 and Energoalliance its rejoinder on March 2, 2015.

21. In its submissions to the Court, the Republic of Moldova argued that the award should be set aside, alleging the arbitral tribunal did not have jurisdiction over Energoalliance's

---

[9] Code of Civil Procedure, Article 1526: "Neither an action to set aside an award nor an appeal against an enforcement order shall suspend enforcement of an award. However, the first president ruling in expedited proceedings (*référé*) or, once the matter is referred to him or her, the judge assigned to the matter (*conseiller de la mise en état*), may stay or set conditions for enforcement of an award where enforcement could severely prejudice the rights of one of the parties."



claims (Article 1520 1° of the Code of Civil Procedure). It sought to demonstrate that (i) Energoalliance was not an investor under the Energy Charter Treaty (the "ECT"), (ii) the debt itself did not consist in an investment under the ECT, (iii) Energoalliance did not have any activity on Moldovan territory, as the electricity was delivered on the Ukrainian side of the border. All of these questions have been considered by the Tribunal and resolved in favor of Energoalliance. The Republic of Moldova also requested that the Paris Court of Appeal make a preliminary question to the European Court of Justice (the "ECJ") on the proper interpretation to be given to the contentious dispositions of the ECT, as European Union is party to the treaty.

22. The Republic of Moldova further submitted that the compensation awarded in the arbitral award went against French international public policy (Article 1520 5° of the Code of Civil Procedure), as Moldova was sentenced to pay more than the price Energolliance paid to acquire the investment from Derimen.

23. In reply, Komstroy sought to establish that the arbitral tribunal had been right to exercise jurisdiction by qualifying the debts held by Energoalliance as an investment in Moldova, and, as a consequence, Energoalliance as an investor under the ECT. It opposed the request for a preliminary question to the ECJ. It also contested that the amount of compensation awarded by the arbitral tribunal violated French public policy.

24. On June 25, 2014, Energoalliance requested from the *Tribunal de Grande Instance de Paris* to grant *exequatur* to the arbitral award. A decision was issued on 30 June 2014, qualifying the arbitral award as enforceable in France. See Exhibit A for relevant pages of the arbitral award with *exequatur* translated into English.[10]

25. On January 28, 2016, the parties took part in the hearing before the Paris Court of Appeal. The Republic of Moldova was represented by its counsels from DLA Piper UK LLP and Lissarrague-Dupuis-Boccon-Gibod SCP. Komstroy was represented by Lazareff Le Bars and Pellerin-de Maria-Guerre SELARL. I myself delivered pleadings for Komstroy.

26. Counsel for Moldova developed the arguments made in its written submissions: contesting both the arbitral tribunal's jurisdiction over the case and the conformity of the compensation awarded with French international public policy. It also briefly addressed the issue of a preliminary question to the ECJ. I, in my turn, contested the grounds for annulment raised by the appellant before the Paris Court of Appeal, as well as its subsidiary request for a preliminary question to the ECJ.

---

[10] The original arbitral award was issued in Russian. It was translated and submitted to the Court in French. The English translation is translation of the French text of the award.



27. Moldova did not request any stay of *exequatur*. The Paris Court of Appeal will issue its decision on the set-aside action on March 22, 2016.

28. When the decision is issued, either party may file an appeal before the French Supreme Court (the "Cour de cassation"), within two month following the notification of the decision[11]. However, in our case this time bar would be extended by two additional months as the parties are domiciled abroad[12]. The French *Cour de cassation* is competent for deciding issues of law exclusively, and may quash only the legal reasoning of the Court of Appeal. Proceedings before the Supreme Court last on average for one and a half year. However, in the present dispute, longer delays may be expected as the parties are abroad.

29. Proceedings before the French Supreme Court will not suspend the enforcement of the decision of the Court of Appeal.

## IV. PROCEDURAL ISSUE REGARDING THE SUBSITUTION OF ENERGOALLIANCE BY KOMSTROY

30. On October 6, 2014, a deed of transfer was concluded, by which Energoalliance transferred to Komstroy all of its rights and obligations. With its rejoinder of March 2, 2015, Komstroy informed Moldova of the event and that Komstroy was the new respondent in the annulment proceedings.

31. On March 4, 2015 Moldova requested the production of documents proving the transfer of rights from Energoalliance to Komstroy. The latter complied by producing extracts of the deed of transfer on March 17, 2015.

32. On March 12 and March 19, 2015, the Republic of Moldova requested that the Paris Court of Appeal issue an order requiring Komstroy to produce a certified copy of the deed of transfer. Komstroy contested the request in its submissions of March 18, 2015.

33. On May, 21 2015, the Paris Court of Appeal issued an order requiring Komstroy to produce a complete and certified copy of the deed of transfer, as well as its certified translation, to Moldova's legal counsel.

34. The Order of May 21, 2015 mistakenly referred to Energoalliance as the respondent. The Republic of Moldova therefore requested that the court rectify the Order by referring to Komstroy as the respondent. The Paris Court of appeal granted the request by the Order for Rectification of July 2, 2015 (*Ordonnance rectificative d'erreur matérielle*). See

---

[11] Code of Civil Procedure, Article 612.

[12] Code of Civil Procedure, Article 643.

Exhibit B for a copy of *Ordonnance rectificative d'erreur matérielle* and its English translation.

35. Komstroy complied with the Order of May 21, 2015 by producing a certified copy of the relevant documents,[13] as well as a certified translation of them, on June 18, 2015.

36. Without further contestation by Moldova, the transfer of rights from Energoalliance to Komstroy was from then on established before the Paris Court of Appeal. During the hearing on the merits at the Paris Court of Appeal on January 28, 2016, the Court indicated that it would no longer consider this matter as contested and the Republic of Moldova agreed.

V.   **ABSENCE OF STAY OF ENFORCEMENT OF THE AWARD**

37. Pursuant to French law an international award is fully enforceable since *exequatur* is granted. However a judge may stay or adjust enforcement if enforcement may seriously undermine the rights of one of the parties. A request to stay enforcement may be filed at any time, as the law (Article 1526 of the Code of Civil Procedure) does not impose any particular deadline.

38. To our knowledge, no request for a stay of enforcement of the award was made by Moldova, nor was any stay issued by the Court of Appeal.

39. The arbitral award issued on October 25, 2013 against the Republic of Moldova and in favor of Energoalliance with Komstroy as its successor in interest is in full force and effect as a matter of French law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 8 February 2016.

Benoit LeBars

---

[13] The produced documents included the following: Agreement on the reorganization proceedings of "Energoalliance" LLC by merger with "Komstroy" LLC; Minutes no. 11/13 of the General Assembly of Shareholders of the limited liability company "Energoalliance" LLC, 2 December 2013; Minutes no. 3 of the General Assembly of Shareholders of the limited liability company "Komstroy" LLC, 2 December 2013; Deed of transfer of "Energoalliance" LLC, 6 October 2014; Minutes no. 10/14 of the General Assembly of Shareholders of the limited liability company "Avtosyla", 20 October 2014 and Statement of Dmytro. V. Sarnatskyi, director of Komstroy LLC, 29 May 2015.