UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LLC SPC STILEKS**, <br><br>                    Petitioner, <br><br>           v. <br><br> **THE REPUBLIC OF MOLDOVA**, <br><br>                    Respondent. | Case No. 14-cv-1921 (CRC) |

**MEMORANDUM OPINION**

This is another installment in Petitioner LLC SPC Stileks's efforts to enforce a 2013 arbitral award against Respondent the Republic of Moldova. After this Court confirmed the arbitral award, and after multiple appeals, Stileks now asks for an order under 28 U.S.C. § 1610(c) authorizing enforcement of the judgment. Stileks also moves to compel Moldova to respond to various post-judgment discovery requests concerning Moldova's assets and property. For the following reasons, the Court will grant the motion for a § 1610(c) order and the motion to compel discovery as to all but one of Stileks's requests.

**I.    Background**

Because the parties and the Court are already quite familiar with the factual background of this case, which has been the subject of multiple opinions already, the Court provides only a brief summary here. See, e.g., LLC SPC Stileks v. Republic of Moldova (Stileks I), 985 F.3d 871 (D.C. Cir. 2021); LLC Komstroy v. Republic of Moldova, Case No. 14-cv-01921 (CRC), 2019 WL 3997385 (D.D.C. Aug. 23, 2019).

In October 2013, an arbitral tribunal in Paris issued an arbitration award against Moldova in favor of Stileks's predecessor-in-interest, Ukrainian energy provider Energoalliance. Pet. to Confirm Arbitration Award ("Pet.") ¶ 1. After Moldova refused to pay, Energoalliance

petitioned this Court to recognize and enforce the award. Id. ¶ 2. The Court stayed the case for a time while Moldova sought to set aside the award in a French appellate court. See LLC Komstroy, 2019 WL 3997385, at *3. In August 2019, this Court granted the petition to confirm the arbitral award. Id. at *15. Moldova appealed to the D.C. Circuit, which largely affirmed this Court's decision but remanded for the Court to consider questions concerning the currency of the judgment. Stileks, 985 F.3d at 874. In November 2021, this Court granted Stileks's motion to determine prejudgment interest and denied Moldova's request for a stay pending the outcome of additional proceedings in Europe. LLC SPC Stileks v. Republic of Moldova (Stileks II), Case No. 14-cv-1921 (CRC), 2021 WL 5318029, at *8 (D.D.C. Nov. 16, 2021). Moldova again appealed the stay denial to the D.C. Circuit, which affirmed. LLC SPC Stileks v. Republic of Moldova (Stileks III), No. 21-7141, 2022 WL 17829502, at *1 (D.C. Cir. Dec. 21, 2022).

Now, Stileks has filed two additional motions pertaining to its efforts to enforce the Court's judgment. First, Stileks filed a motion for an order pursuant to 28 U.S.C. § 1610(c) authorizing enforcement of the judgment. Second, Stileks has moved to compel Moldova to respond to various post-judgment discovery requests relating to its efforts to identify Moldova's attachable assets that might satisfy the judgment. The motions are fully briefed and ripe for decision.[1]

---

[1] After the parties completed briefing on these two motions, Moldova filed a notice that, applying a new interpretation of the Energy Charter Treaty by the European Union Court of Justice, the Paris Court of Appeals has now determined that the arbitral tribunal that issued the award underlying this case lacked jurisdiction and has therefore vacated the arbitral award. See Notice of Filing of French Court Decision, ECF No. 112. Moldova notes, however, that the decision "is subject to appeal to the Court of Cassation" of France, id. at 1, and the last time the Paris court vacated the arbitral award, on similar grounds, the Court of Cassation did not resolve the appeal (which ultimately reversed the Paris court) for two years, see LLC Komstroy, 2019 WL 3997385, at *3. Because neither party has asked for a stay in light of the Paris court's most recent decision, the Court proceeds to decide the pending motions while the Court of Cassation considers any appeal.

## II. Legal Standards

Section 1610(c) of the Foreign Sovereign Immunities Act ("FSIA") provides that no attachment or execution of foreign assets may proceed "until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c).

Federal Rule of Civil Procedure 69 provides that a judgment creditor, "[i]n aid of the judgment or execution," may "obtain discovery from any person . . . as provided in these rules." Fed. R. Civ. P. 69(a)(2). The party objecting to discovery "bears the burden of 'show[ing] why discovery should not be permitted'" and must "includ[e] the reasons" for any objection to a document request. DL v. District of Columbia, 251 F.R.D. 38, 43 (D.D.C. 2008) (alterations in original) (quoting Alexander v. FBI, 194 F.R.D. 299, 302 (D.D.C. 2000)). When answering interrogatories, in particular, the grounds for objecting "must be stated with specificity," and any "ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Id. (quoting Fed. R. Civ. P. 33(b)(4)).

## III. Analysis

### A. Motion for § 1610(c) Order

FSIA § 1610(c) "imposes two basic requirements on a plaintiff seeking to enforce a judgment against a foreign state or its agencies and instrumentalities: first, each defendant must receive notice that judgment has been entered against it; and second, each defendant must be given an adequate opportunity to respond." Agudas Chasidei Chabad of U.S. v. Russian Federation, 798 F. Supp. 2d 260, 266–67 (D.D.C. 2011). The purpose of this rule is "to ensure that a foreign power is always given an opportunity to evaluate and respond to any court

3

judgment entered against it which could subject its property and interests in the United States to attachment or execution." Id. at 271.

Stileks is entitled to an order under § 1610(c). First, contrary to any suggestion by Moldova, see Opp. to Mot. for § 1610(c) Order at 2, the notice requirements described in § 1608(e) do not apply in this case. Section 1608(e) governs default judgments and requires that a "copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." 28 U.S.C. § 1608(e). There is no default judgment at issue in this case, as Moldova has appeared and litigated Stileks's petition to confirm the arbitral award. In any event, because Moldova has been litigating the case, is well aware of the judgment, and has in fact appealed the Court's decision to grant the petition, no further notice is required. See Baker v. Socialist People's Libyan Arab Jamahirya, 810 F. Supp. 2d 90, 101 (D.D.C. 2011) ("[N]o further notice of the final judgment was required after the defendants filed an appearance in the case and noted their appeal . . . .").

Second, a reasonable period of time has elapsed following the entry of judgment. A "period of a few months" has "been repeatedly found sufficient under the Act." Agudas Chasidei Chabad, 798 F. Supp. 2d at 270; see Kapar v. Islamic Republic of Iran, 105 F. Supp. 3d 99, 108 (D.D.C. 2015) (Cooper, J.) (noting that a reasonable period can be as short as six weeks). Although the length of a reasonable time "'will of course vary according to the nuances of each case,' courts have found a period of three months and less reasonable." Koch Mins. Sàrl v. Bolivarian Republic of Venezuela, No. 17-cv-2559 (ZMF), 2022 WL 521747, at *2 (D.D.C. Feb. 22, 2022) (quoting Owens v. Republic of Sudan, 141 F. Supp. 3d 1, 9 (D.D.C. 2015)). Judgment here was entered well over a year ago, in December 2021. Moldova has identified no reason to believe that this length of time is insufficient.

Rather than contend that Stileks has not met the requirements of § 1610(c), Moldova maintains that this Court is not the proper forum to issue a § 1610(c) order at all because such an order can only come from the court actually ordering attachment and execution of assets. See Opp. to Mot. for § 1610(c) Order at 3–4.  Moldova also asserts that Stileks must identify specific Moldovan assets that could be subject to attachment or execution before the Court may issue a § 1610(c) order.  See id. at 3–5.  These assertions confuse the purpose of a § 1610(c) order.  The order under § 1610(c) sought by Stileks "is not a writ of attachment or execution"; rather, it "merely—and only—finds that the requirements of § 1610(c) have been satisfied." Agudas Chasidei Chabad, 798 F. Supp. 2d at 271 n.2.  Courts in this district routinely issue § 1610(c) orders before the moving party has identified or sought to execute any specific assets.  See Kapar, 105 F. Supp. 3d at 108 (issuing an order when "Kapar ha[d] not yet sought to execute or attach any assets of Iran or the Ministry of Information and Security to satisfy his original judgment"); Koch Mins. Sàrl, 2022 WL 521747, at *3–4 (issuing an order where the defendant's assets were located in Delaware).

For its part, Moldova cites no binding authority to support its argument that this Court lacks the power to issue a § 1610(c) order at this stage.  To support the proposition that only the court ordering attachment or execution of assets may issue a § 1610(c) order, Moldova relies on a statement from Connecticut Bank of Commerce v. Republic of the Congo, 309 F.3d 240 (5th Cir. 2002), that § 1610(c) "is directed entirely to a court attaching or executing against a foreign state's property, and not at all to the merits court," id. at 249. See Opp. to Mot. for § 1610(c) Order at 4.  In context, however, that aside was about whether the § 1610(c) order at issue there was entitled to res judicata effect, not a holding about which court has authority to issue a § 1610(c) order.  See Conn. Bank of Com., 309 F.3d at 248–51 (noting that § 1610(c) order

5

could have res judicata effect "only if *some other court actually executing on* the Congo's property were to treat the order as" preclusive (emphasis added)). Moldova also cites an unpublished order from the Southern District of Mississippi, which concluded that "the particular court at issue in § 1610(c) is the one ordering the attachment and execution." Order Granting in Part and Denying in Part Without Prejudice Plaintiff's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963 at 5–6, Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela, No. 1:02-cv-785 (S.D. Miss. July 23, 2020), ECF No. 441. But that conclusion is not binding on this Court and, as just explained, is inconsistent with practice in this District.

Last, Moldova relies on statements from a few other out-of-circuit cases to the effect that § 1610(c) "requires a prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property." Walters v. Indus. & Com. Bank of China, Ltd., 651 F.3d 280, 291 (2d Cir. 2011); see also Rubin v. Islamic Republic of Iran, 637 F.3d 783, 800 (7th Cir. 2011). Those cases, however, addressed an entirely different question—whether a district court may apply the FSIA's execution-immunity provisions, found in § 1609, even when a sovereign has not appeared to invoke its immunity. See Walters, 651 F.3d at 290–91; Rubin, 637 F.3d at 800–01. Moreover, unlike here, both cases also arose in the context of petitions to attach and execute particular pieces of property, see Walters, 651 F.3d at 284–85; Rubin, 637 F.3d at 786–87, but courts in this district have repeatedly distinguished between an order that "merely—and only—finds that the" notice and passage-of-time "requirements of § 1610(c) have been satisfied" and a separate order authorizing "the attachment of, or execution upon, any property," Agudas Chasidei, 798 F. Supp. 2d at 271 n.2; accord Koch Mins. Sàrl, 2022 WL 521747, at *3 ("The decision for the permissibility of

attachment . . . will fall to the court that enforces the attachment and disposes of Defendant's assets, which here will likely be the District of Delaware."). Here, the Court's order concludes only that a "reasonable period of time" has elapsed "and that plaintiffs are entitled to begin enforcing their presumptively valid judgments." Owens, 141 F. Supp. 3d at 11. The order "will not authorize the attachment or execution upon any particular property," and Stileks "must still convince a court with jurisdiction over specific assets that those assets are subject to attachment or execution under § 1610." Id.

Because the requirements of § 1610(c) are met here, the Court will issue an order authorizing enforcement of the judgment.

B. Motion to Compel Discovery

The Court next turns to Stileks's motion to compel discovery. In May 2022, Stileks served 23 requests for production of documents ("RFPs") and 13 interrogatories concerning Moldova's assets. See Declaration of Gene M. Burd ISO Mot. to Compel ("Burd Decl."), Exs. 1–2. As to the RFPs, Moldova made general objections based on privilege as well as some specific objections discussed below, including objections to the definition of "Moldova" as including agencies, instrumentalities, political subdivisions, representatives, and state-controlled entities. See Burd Decl., Ex. 3. It has not produced any documents. As to the interrogatories, Moldova has not responded at all. The Court will address each of Moldova's arguments in turn.

First, Moldova contends that a § 1610(c) order "is a prerequisite for taking any steps to execute a judgment against a foreign state," including discovery. Opp. to Mot. to Compel at 5. The cases Moldova cites do not support that proposition or bind this Court, but in any event, the Court issues a § 1610(c) order with this opinion. This objection, therefore, is moot.

Next, Moldova objects that a subset of Stileks's RFPs—RFPs 12–16, 18–21, and 23—seek publicly available information.  Opp. to Mot. to Compel at 7.  These RFPs request lists of officers of various Moldovan agencies and state-controlled entities (RFP 12–13); organizational documents such as decrees, statutes, resolutions, charters, and articles of association (RFP 14); corporate documents for state controlled entities (RFP 15); "documents reflecting" various Moldovan agencies and ministries, including "documents reflecting common office space, addresses, or telephone numbers" (RFP 16); documents concerning power of attorney and authority of officers of various Moldovan agencies to "act on behalf of one another" (RFP 18); documents concerning Moldova's authority over various state controlled entities (RFP 19–20); documents concerning Moldova's obligations to state-controlled entities or vice versa (RFP 21); and judicial or administrative decisions and court papers concerning relationships between various Moldovan agencies and state-controlled entities (RFP 23).  See Burd Decl., Ex. 3 at 7–11.

The Court overrules this objection.  To start, "courts have unambiguously stated" that the fact that some information sought in discovery may be equally available to the requesting party "is insufficient to resist a discovery request."  Nat'l Acad. of Recording Arts & Scis. v. On Point Events, LP, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (quoting St. Paul Reinsurance Co. v. Com. Fin. Corp., 198 F.R.D. 508, 514 (N.D. Iowa 2000)); accord City Consumer Servs., Inc. v. Horne, 100 F.R.D. 740, 747 (D. Utah 1983) ("It is 'not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.'" (quoting Petruska v. Johns-Manville, 83 F.R.D. 32, 35 (E.D. Pa. 1979))).  Moreover, although it seems possible that some of the requested documents may be available to the public—such as judicial decisions, court papers, and some corporate documents—Moldova has not provided any reason

8

to believe all the requested documents are equally accessible to Stileks.  At the very least, if it is true that some of the requested documents are publicly available, Moldova could easily direct Stileks to specific websites or databases where those materials can be found.  This objection, therefore, does not preclude discovery.

Moldova next asserts that the documents and information sought in RFPs 16–17 and 22 are privileged.  Opp. to Mot. to Compel at 7–8.  Moldova has refused, however, to provide a privilege log, maintaining that doing so would be unduly burdensome.  Id.  It may be that some of the documents responsive to these requests could contain privileged information.  For instance, RFP 17 seeks "[a]ll [c]ommunications to, from, or among" Moldova "concerning the repudiation, payment, or non-payment of the judgment in this Action" or the arbitral award, and RFP 22 seeks documents concerning meetings or communications by Moldova pertaining to Petitioner or its predecessors-in-interest.  Burd Decl., Ex. 3 at 9, 11.  But "[t]o successfully assert privilege, a party must expressly claim privilege as an objection to a discovery request, *and describe the privileged document with enough particularity so the party's opponent can assess the claim*."  Caudle v. District of Columbia, 263 F.R.D. 29, 35 (D.D.C. 2009) (emphasis added).  For that reason, "[m]erely claiming privilege as a defense to production" is inadequate, and "claiming privilege without" producing a privilege log as required by Federal Rule of Civil Procedure 26(b)(5) "is an insufficient and illegitimate response."  McNamara v. Picken, Civ. Act. No. 11-1051 (ESH/JMF), 2013 WL 2423804, at *5 (D.D.C. June 4, 2013); see Caudle, 263 F.R.D. at 35 ("A privilege log has become an almost universal method of asserting privilege under the Federal Rules.").

Moldova maintains that producing a privilege log in this case would be unduly burdensome, relying on a case in which petitioners sought to compel discovery from a law firm

9

consisting of "all communications among attorneys within the respondent firm about and with its long-standing client of over ten years." In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding, 286 F. Supp. 3d 1, 3 (D.D.C. 2017). But as Stileks correctly points out, the reason a privilege log may not be required "when a discovery request demands production of an attorney's records in connection with representation of a client" is that it is presumed in that situation that almost all such documents "would be protected by the attorney-client privilege or attorney work-product doctrine." Id. at 7 (quoting Dell Inc. v. Decosta, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017)). Assembling a voluminous privilege log under those circumstances therefore tends to "impose an undue and disproportionate burden." Id. (quoting Dell, 233 F. Supp. 3d at 3–4). Here, Stileks's RFPs may capture some privileged materials, but they do not seek anything close to the production of an attorney's entire case file. Moldova must therefore produce all non-privileged responsive documents as well as a privilege log describing any withheld documents and the basis for asserting privilege.

      Next, Moldova further objects to various RFPs on the grounds that those requests seek documents and information predating the entry of judgment and are therefore unduly broad. For instance, Moldova objects to the request for documents concerning the issuance of securities or bond offerings in which Moldova participated as an issuer or seller from the period of January 2016 to the present because that timeframe "includes issuances that were already paid off and cannot form the basis for any claim or defense." Burd Decl., Ex. 3 at 6. The Court agrees with Stileks, however, that bonds, securities, and other instruments issued by Moldova and its instrumentalities even years before judgment may still be outstanding and may therefore be relevant to assessing Moldova's current financial situation. That Moldova had no obligation to

pay Stileks before the judgment was issued is immaterial, as the purpose of the requests is to enable Stileks to investigate what assets are available now.

In addition to these more specific objections, Moldova also raises a host of objections based on vagueness and overbreadth. Moldova asserts that RFPs 16–19 and 23 are vague, contradictory, overbroad, and unduly burdensome. Opp. to Mot. to Compel at 8–9. In particular, Moldova points to the term "State-controlled entity," which is part of the definition of "Moldova" in the RFPs, and "Identified State Controlled Entities," a term incorporated into "State-controlled entity." Id. at 9. Moldova's problem with these definitions seems to be that they may include entities that have been privatized or entities in which the Republic owns less than a 50% stake. Id. Relatedly, Moldova contends that almost all of Stileks's discovery requests are overbroad or irrelevant because the definitions of "Moldova" and "State-controlled entity" include agencies, instrumentalities, political subdivisions, representatives, alter-egos, and the like, which Moldova maintains are non-parties beyond the scope of post-judgment discovery. Id. at 9–17.

For the most part, these objections are misguided. "The rules governing discovery in postjudgment execution proceedings are quite permissive." Republic of Argentina v. NML Cap., Ltd., 573 U.S. 134, 138 (2014). "The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied and consequently, the judgment creditor should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor." Wall v. DO & CO NY Catering, Inc., No. CV 18-3725, 2021 WL 4133756, at *1 (E.D.N.Y. Sept. 9, 2021); see Amduso v. Republic of Sudan, 288 F. Supp. 3d 90, 94 (D.D.C. 2017) ("As a general rule, legal victors may engage in broad post-judgment discovery."). "As long as the judgment debtor 'has at least *some* ownership interest in'

11

the property at issue directly or through an instrumentality," then the FSIA "allows attachment from an agency or instrumentality regardless of whether it is the sovereign's alter ego." Amduso, 288 F. Supp. 3d at 96 n.4 (quoting Weinstein v. Islamic Republic of Iran, 831 F.3d 470, 483 (D.C. Cir. 2016)).  The party seeking discovery may therefore request information about property held by such instrumentalities because, at this stage, "they '*do[] not yet know* what property [Moldova] has and where it is, let alone whether it is executable under the relevant jurisdiction's law.'"  Id. (first alteration in original) (quoting NML Cap., 573 U.S. at 144).

Moreover, Moldova at the very least "cannot complain about requests for discovery from any political subdivisions or government agencies that are not separate juridical entities, or with whom [Moldova] enjoys a principal-agent relationship, since these are considered to be part of the government" of Moldova itself.  Id. at 95–96.  Here as in Amduso, Stileks asks only for documents concerning Moldova's instrumentalities which Moldova "might have in its own 'possession, custody, or control.'"  Id. at 96; DL, 251 F.R.D. at 46 ("With regards to the term 'control,' it has been well established that the test for control is not defined as mere possession, but as the legal right to obtain such documents on demand." (quoting Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 242 F.R.D. 1, 8 (D.D.C. 2007))); see Burd Decl., Ex. 1 at 5 ("In complying with the Requests, You are required to produce all Documents described below which are in Your possession, custody, or control . . . .").  If Moldova owns or controls a particular entity, "any documents in that entity's possession are likely also within [Moldova's] control and therefore subject to discovery."  Amduso, 288 F. Supp. 3d at 96.  To the extent Moldova identifies responsive documents that are not within its control, "either because [Moldova] does not exercise control over a particular entity, or because it has no 'legal right to obtain [those] documents on demand,'" Moldova can simply "provide an explanation in lieu of the documents."

Id. (second alteration in original) (quoting DL, 251 F.R.D. at 46); see id. (noting that Sudan could "provide a reasoned explanation as to why it does not exercise control over a given entity or set of documents in response to plaintiffs' discovery request"). But Moldova may not, as it has done so far, refuse outright to produce any documents based on the objection that some documents covered by the RFPs could be beyond its control.[2]

Moldova contends that "[s]imilar broad discovery requests" were rejected in Gujarat State Petroleum Corp. v. Republic of Yemen, No. 19-mc-0547 (RA), 2022 WL 1567464 (S.D.N.Y. May 18, 2022). See Opp. to Mot. to Compel at 14. The Court disagrees. Like other cases cited by Moldova, see, e.g., Koon Chun Hing Kee Soy & Sauce Factory, LTD. v. Star Mark Mgmt., Inc., No. CV-04-2293, 2010 WL 3780275, at *1 (E.D.N.Y. Sept. 22, 2010), Gujarat did not concern requests for discovery directed at the judgment debtor. Rather, Gujarat involved a third-party subpoena issued by the plaintiff to the Federal Reserve Bank of New York asking for information about accounts held by the Central Bank of Yemen, including "the present value of the Central Bank's accounts, their contents, and the source and destination of all withdrawals, deposits, and transfers connected to those accounts from the past five years." Gujarat, 2022 WL 1567464, at *1. The Southern District of New York noted that the plaintiff had made "no attempt to tether" the information requested from the third party to the assets of the judgment debtors in that case and thus concluded that the subpoena was overbroad "in light

---

[2] Moldova also asserts that it need not provide any discovery with respect to assets in Russia, Belgium, Romania, and Ukraine because Stileks previously submitted a declaration stating that it had attempted unsuccessfully to enforce the arbitration award in those countries. See Seventh Declaration of Viacheslav Lynch at ¶¶ 12–31, ECF No. 91-1. But "plaintiffs can seek discovery wider than the scope of what is ultimately attachable." Amduso, 288 F. Supp. 3d at 96 n.4. Even if Stileks may ultimately be unable to attach property in those jurisdictions, discovery about property there will enable Stileks to trace Moldova's attachable assets and understand "what property [Moldova] has and where it is," which is the purpose of post-judgment discovery. Id.

of the limitations on third-party asset discovery." Id. at *9; see also, e.g., Blaw Knox Corp. v. AMR Indus., Inc., 130 F.R.D. 400, 403 (E.D. Wis. 1990) ("The interest of *third parties in their privacy* must be balanced against the need of the judgment creditor to the documents in question." (emphasis added)); NML Cap., Ltd. v. Republic of Argentina, No. C 12-80185 JSW, 2013 WL 655211, at *1 (N.D. Cal. Feb. 21, 2013) ("When the ground for the discovery is an alleged alter ego relationship [between a third party subject to subpoena and] the judgment debtor, there must be facts before the Court to show the basis for the allegation." (citation omitted)). Here, by contrast, Stileks seeks documents that are under Moldova's control and seeks them directly from Moldova. Whatever objections were legitimate in Gujarat do not apply here.

The Court agrees, however, with Moldova's overbreadth objection to RFP 16. That request seeks "[d]ocuments reflecting the Public Property Agency of the Republic of Moldova, Ministry of Finance, Ministry of Infrastructure and Regional Development, Ministry of Internal Affairs, Ministry of Economy, Invest Moldova Agency, the Civil Aeronautical Authority, the Moldova's Cabinet of Ministers, and the Identified State Controlled Entities from January 1, 2019, to the present, including any documents reflecting common office space, addresses, or telephone numbers." Burd Decl., Ex. 3 at 8. Moldova objected to that RFP as overbroad and unduly burdensome because, "[a]s drafted, it seeks '[d]ocuments reflecting'" a wide variety of agencies. Id. The Court agrees that the terminology in the request—seeking documents "reflecting" the named agencies without any narrower description of what is sought—could be read to capture any document that mentions or discusses one of these agencies, and thus might require production of a massive amount of largely irrelevant material. As currently drafted, the Court has a difficult time understanding what specific documents Stileks seeks in this RFP. It is

14

possible that the real purpose of the RFP is to obtain "documents reflecting common office space, addresses, or telephone numbers" of the named entities, as suggested by the final clause of the request.  Id.  But unless Stileks narrows this RFP along those lines or otherwise clarifies its scope, the Court will not compel Moldova to comply with it.

Turning to Stileks's interrogatories, as stated above, Moldova has provided *no* responses or objections.  Moldova contends that, given the "similarity of the Interrogatories and Requests for Production, the Republic's objections to the Requests for Production also apply to the Interrogatories," and it would be "impractical for the Republic to respond to the Interrogatories when they would naturally be subject to the same objections the Republic made in its Responses" to the RFPs.  Opp. to Mot. to Compel at 17–18.  Moldova cites no legal authority to support that position.  To the contrary, the general rule is that, absent good cause, "untimely objections to discovery requests are waived."  Caudle, 263 F.R.D. at 33; see Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").  Moldova advances no argument that it had good cause not to respond; indeed, if its position is that its bases for objecting to the interrogatories are identical to its bases for objecting to the RFPs, Moldova could have easily responded to the interrogatories largely by copying its RFP responses.  In any event, even if Moldova's objections to the interrogatories are not waived, the Court has addressed and overruled those objections here.

The only other objection Moldova raises to responding to the interrogatories is that "the information requested in the Interrogatories could be retrieved from the documents sought in the" RFPs.  Opp. to Mot. to Compel at 18.  At present, however, Stileks cannot test this assertion because it has not been provided any documents to begin with.  Even if Moldova does eventually

produce documents, it cannot simply "refer generically to past or future production of documents" in response to interrogatories but rather must "identify in [its] answers to the interrogatories specifically which documents contain the answer." United States v. All Assets Held at Bank Julius Baer & Co., 276 F.R.D. 396, 400 (D.D.C. 2011) (emphasis omitted) (quoting DL, 251 F.R.D. at 48). Any possible overlap between the RFPs and interrogatories does not give Moldova license to ignore the latter entirely.

Finally, Moldova's contention that Stileks failed to meet and confer in good faith before moving to compel, as required by Rule 37(a)(1), is baseless. In attachments to its motion to compel, Stileks produced emails showing that it emailed Moldova's counsel multiple times well after the deadline for responses, asking when Moldova would respond. When Moldova's counsel did not answer, Stileks informed them of its intent to file a motion to compel responses. Moldova's counsel still did not answer. See Burd Decl., Exs. 4–6. Stileks met its obligations to meet and confer, notwithstanding the fact that Moldova rebuffed those efforts.[3]

---

[3] In its motion to compel, Stileks also requested reasonable attorneys' fees and expenses. If it grants in full a motion to compel discovery, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Exceptions apply if, among other things, the opposing party's nondisclosure was "substantially justified" or if "other circumstances make an award of expenses unjust." Id. Where a motion to compel is granted only in part, the Court "*may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Id. R. 37(a)(5)(C) (emphasis added). Moldova opposes an award of fees. Neither party has fully briefed whether fees are required here or, if they are, what sum should be awarded. The Court therefore will defer ruling on any motion for fees, as requested in Stileks's reply brief. See Reply at 15. Stileks may renew its request for fees in a new motion after the filing of this opinion.

## IV. Conclusion

For the foregoing reasons, the Court will grant Petitioner's [Dkt. No. 103] Motion for an Order Pursuant to 28 U.S.C. § 1610(c) and will grant in part Petitioner's [Dkt. No. 108] Motion to Compel Production of Documents and Answers to Interrogatories. A separate Order will accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: March 23, 2023