UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LLC SPC STILEKS,<br><br>        Petitioner,<br><br>- against –<br><br>THE REPUBLIC OF MOLDOVA,<br><br>        Respondent. | Civil Action No. 1:14-cv-01921<br><br>**REPUBLIC OF MOLDOVA'S *REPLY* MEMORANDUM OF SUPPORT OF ITS MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(4), (5), AND (6)** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT……………………………………………………………………………………2

    I.    Relief is Necessary Under Fed. R. Civ. P. 60(b)(4) Because The Court Does Not and Did Not Have Jurisdiction Under the Arbitration Exception…………………………3

    A.    Stileks' Assessment of *The Chevron* Ruling Is Wrong, and Does Not Alter the Outcome That It Did Not Have the Capacity to Arbitrate, Hence Unable to Enter Into an Arbitration Agreement……………………………………………….3

    B.    Foreign Courts Have Competence to Address ECT Matters………..………………6
    C.    Petitioner and This Court Have Relied Upon The Principles Of International Comity From The Commencement Of This Litigation…………………………..7

    II.    The Court Should Grant Relief Pursuant to Rule 60(b)(5) Because the Arbitral Award Upon Which The Court Based Its Jurisdiction Has Been Voided…………………..8

    III.    Stileks Can't Avail Itself of the Extraordinary Exception Under Rule 60(b)(6) to Relitigate The Merits of the Award……………………………………………….8

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*CD. Anderson, Co., v. Lemos*
832 F.2d 1097, 1100 (9th Cir. 1987)……………………………………………………..8

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.,*
138 S. Ct. 1865, 1874 (2018) ......................................................................................6

*Allen v. McCurry*
449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)……………………………………..8

*Blasket Renewable Invs. v. Kingdom of Spain*,
2023 WL 2682013 CIVIL 21-3249 (RJL) (D.D.C. Mar. 29, 2023)………………………4,6,7

*Bynoe v. Baca*,
966 F.3d 972 (9th Cir. 2020) .........................................................................……9

*Chevron Corp. v. Ecuador*
795 F.3d 200, 204 (D.C. Cir. 2015 ..........................................................……...2,3

*China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*
379 F.3d 796, 799-800 (9th Cir. 2004)…………………………………………………8

*Crocker v. Piedmont Aviation, Inc.*
49 F.3d 735, 739-40 (D.C. Cir. 1995)…………………………………………………9

*Daubert v. Merrell Dow Pharmaceuticals Inc.*
509 U.S. 579 (1993)……………………………………………………………….....4

*Den Norske Bank AS v. First Nat'l Bank of Boston*
75 F. 3d 49, 57-58 (1st Cir. 1996)…………………………………………………4

*Electronic Privacy Information Center. V. U.S. Dep't of Homeland Security*
811 F. Supp.2d 216 (D.D.C. 2011)…………………………………………………1

*Jackson v. Jackson*,
276 F.2d 501 (D.C. Cir. 1960)……………………………………………………...8

*LaShawn A. v. Barry*
87 F.3d 1389, 1393 (D.C. Cir. 1996)………………………………………………..9

*Seung Woo Lee v. Imaging3, Inc.*
   283 F. App'x 490, 493 (9th Cir. 2008)………………………………………………………….8

**Statutes and Conventions**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, ("New York Convention")21 U.S.T. 2517, T.I.A.A. 6997, 330 U.N.T.S. 3 .……………………………………..8

Energy Charter Treaty ("ECT")………………………………………………………………….2-9

Foreign Sovereign Immunities Act ("FSIA")..………………..…………....…..……………1-3

United Nations Commission on International Trade Law ("UNCITRAL")................……6

Fed. R. Civ. P. 60(b)(4) ("Rule 60(b)(4)")…………………………………………………...1,10

Fed. R. Civ. P. 60(b)(5) ("Rule 60(b)(5)").....................................................……………….8,10

Fed. R. Civ. P. 60(b)(6)("Rule 60(b)(6)") ..............................................................…………9,10

28 U.S.C. 1605(a)(6)................................................................................................................ 3

**Foreign Cases**

*Energoalliance v. Republic of Moldova*
Cour de Cassation -Appeal no. Q 16-16.568 ...........................................……………5-7

**Other Authorities**

William S. Dodge, *International Comity in American Law*, Columbia Law Review, Volume 115, No.…………………………………………………………………………………………………..5

Marike R P Paulsson, The 1958 New York Convention in Action (2016)………………….…8

Dennis Solomon, in Stephan Balthasar (ed.), *International Commercial Arbitration* (2nd edition, 2021), chap B……………………………………………………………………………………...8

Pursuant to Fed. R. Civ. P. 60(b)(4-6), Respondent, the Republic of Moldova (hereinafter referred to as "Moldova"), by its undersigned counsel, hereby submits this *REPLY* Memorandum of Law in Support of Moldova's Motion for Relief from Judgment (hereinafter referred to as "Rule 60 Motion"). For the reasons set forth herein, the Court should grant Moldova's Rule 60 Motion.

## PRELIMINARY STATEMENT

This dispute persists because the Court exerts jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA"), which does not exist, nor did it ever exist. The three Judgments[1] entered by this Court rest upon the Court's determination that the "the arbitration exception to the FSIA applies such that it has subject matter jurisdiction to enforce the Award. [ECF No. 60, page 13].

Yet, the January 10, 2023, the Paris Court of Appeals, deprived this Court of that subject matter jurisdiction. The ruling, relying upon the CJEU opinion, held that **the Award is void and the underlying tribunal lacked jurisdiction to issue the Award**: "it is necessary to declare the annulment of the disputed award due to the lack of jurisdiction of the arbitral tribunal, in the absence of a protected investment within the meaning of the [ECT. ECF No. 113, page 91].

D.C. law is also clear that a judgment is void where the issuing court lacked subject matter jurisdiction. *See Electronic Privacy Information Center. V. U.S. Dep't of Homeland Security*, 811 F. Supp.2d 216 (D.D.C. 2011). Because the Paris Court of Appeals "changed everything", Moldova is entitled to relief from the Judgments entered under Federal Rule of Civil Procedure:

---

[1] Judgment 1- ECF Nos. 59 and 60 order and memorandum opinion recognizing the Award and converting it into a US judgment;
Judgment 3- ECF Nos. 97 and 100 judgment and memorandum opinion awarding amounts and pre-judgment interest to Petitioner;
Judgment 4-ECF Nos. 115 and 116-authorizing enforcement of the Judgment and Compelling Moldova to Respond to Discovery Requests. (Collectively Judgement 1, Judgment 3 and Judgment 4 are hereinafter referred to collectively as "Judgments")

1

Rule 60(b)(4)-(6).

Nothing in Stilkes' Opposition to this Motion lessens or invalidates Moldova's arguments. To the contrary, Petitioner's argument strengthen Moldova's arguments why Rule 60 relief is appropriate for the reasons below.

First, Stileks' assessment of the *Chevron* requirements is misplaced and does not refute the necessity that the FSIA arbitration exception requires a *valid* agreement to arbitrate. Petitioner ignores that both the CJEU and Paris Court of Appeals ruling held that Petitioner *never had* the *capacity* to extend an offer to Moldova arbitrate *any* dispute with Moldova, per the ECT. As such, no agreement to arbitrate ever existed. Absent such an agreement, this Court could not establish jurisdiction under any FSIA exception.

Second, the decisions of the foreign courts are binding on federal courts and dispositive as to the question of the validity of an arbitration agreement. This Court's role does not involve an interpretation of the arbitrability of the two ECT signatories, Stileks and Moldova.

Third, Petitioner and this Court properly adhered to international comity and gave deference to the foreign forums and rulings to render decisions on the ECT arbitrability involved. In fact, both have stayed this case pending the rulings of the foreign venues. Stileks' request to disregard foreign rulings at this juncture, is itinerant.

Fourth, Stileks attempts to get a third, fourth or fifth bite at the apple. It litigated this issue in numerous courts in Moldova and France since 2002. It is inequitable to use the US courts to bring another action given that it dislikes the unfavorable results. A recognition action is limited to this Court recognizing a valid Award and prohibits this Court from litigating the merits of the Award.

2

# **ARGUMENT**

I. **Relief is Necessary Under Fed. R. Civ. P. 60(b)(4) Because The Court Does Not and Did Not Have Jurisdiction Under the Arbitration Exception**

A. **Stileks' Assessment of *The Chevron* Ruling Is Wrong, and Does Not Alter the Outcome That It Did Not Have the Capacity to Arbitrate, Hence Unable to Enter Into an Arbitration Agreement**

Stileks' assessment of the *Chevron* requirements is misplaced and does not negate that the arbitration exception requires a valid agreement to arbitrate.

The FSIA's arbitration exception authorizes actions against foreign sovereigns "to confirm an award made pursuant to … an agreement to arbitrate" and subject to an arbitration-enforcement treaty. 28 U.S.C. § 1605(a)(6). If the foreign state shows "there is no arbitration agreement …, the District Court lacks jurisdiction." *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015).

*Chevron* is express that "the arbitration exception requires more than a claim invoking an arbitration award. *Id*. Rather, the *existence* of an arbitration agreement, an arbitration award and a treaty governing the award *are all jurisdictional facts that must be established*." *Id*. (emphasis added).

The DC Circuit made clear that where a party makes a prima facie showing that there is an arbitration agreement by submitting a [ECT] and a notice of arbitration, the burden shifts to the foreign sovereign to rebut the presumption that an agreement to arbitrate exists. *See Chevron*, 795 F.3d at 205.

Although Petitioner made prima facie showing by submitting the documents, outlined in Chevron, it failed to establish their validity. Moldova rebutted the presumption of the existence of the agreement to arbitrate with the Paris Court of Appeal's voiding of the Award.

3

On January 10, 2023, the Paris Court of Appeals, relying upon the CJEU opinion, held **that the Award is void and the underlying tribunal lacked jurisdiction to issue the Award**: "it is necessary to **declare the annulment of the disputed award due to the lack of jurisdiction of the arbitral tribuna**l, **in the absence of a protected investment within the meaning of the ECT**. [ECF No. 113, page 91].

The Paris Court of Appeals could not be clearer that no agreement to arbitrate existed because Stileks' lacked the *capacity* to offer to enter an agreement to arbitrate. [*Id*. at ¶ 88-91]. The ECT outlines the rights and conditions of the signatories, including the conditions to arbitrate. [ECT Art. 26]. In order for Petitioner to offer to arbitrate, Petitioner had to be an investor within the meaning of the ECT. [ECF No. 113, page 91]. Given that Petitioner was deemed not to be an investor, it "lacked the legal authority to make a standing offer to arbitrate to [Moldova]". *See Blasket Renewable Invs., LLC v. Kingdom of Spain,* No. CV 21-3249 (RJL), 2023 WL 2682013, at *8-9 (D.D.C. Mar. 29, 2023). As such, no agreement to arbitrate ever existed. Absent such an agreement, this Court could not establish jurisdiction under any exception to FSIA.

Stileks asks the Court to ignore the CJEU and the Paris Court of Appeals entirely, in fact to ignore the ruling that the Award was nulled. In support of that request, Stileks proffers the "legal opinion" of Professor Bermann. This is an inappropriate attempt to introduce an expert report into testimony, without giving Moldova a timely and full opportunity to address, inter alia, the reliability and relevance of expert witness testimony, based on the Daubert standard. *See Daubert v. Merrell Dow Pharmaceuticals Inc*., 509 U.S. 579 (1993), *Den Norske Bank AS v. First Nat'l Bank of Boston*, 75 F. 3d 49, 57-58 (1st Cir. 1996). Hence, it should be disregarded on its face.

In the alternative, Professor Bermann's legal opinion, does not rebut Moldova's argument. Yet, it appears to be compelling Stileks and Moldova to abrogate their obligations per the ECT.

Moldova and Stileks voluntarily agreed to accept the contours and obligations of the ECT. Article 26 of the ECT requires the parties to duly adhere to the rulings issued by the relevant tribunals, to which both consented to address ECT matters law that limit the disputes with their own jurisdiction.

The ECT tribunals are required to "decide the dispute in accordance with this Treaty and applicable rules and principles of international law." Article 26(6), ECT. Because the French tribunals ruled on ECT matters, "the applicable rules and principles of international law" are those of the French courts and the CJEU.  Further, ECT signatories cannot derogate from the applicable law, as Stileks has done by simply choosing to recognize the ruling that is favorable to it (as it had done when it motion to lift the stay post favorable Cour de Cassation ruling).

The Professor's disregard of the French court's ruling is abhorring the U.S. judicial due process. The question is one of jurisdiction, not offending justice. The French courts nulled the very basis of this Court's subject matter jurisdiction. The United States, although it is not an ECT signatory, does have an interest in adhering to the cornerstone of this judiciary and ensure that a tribunal has the power to render decisions. Placed in Moldova's shoes, it is unlikely that the United States would agree to a foreign tribunal enforcing an Award which has been voided.

The Professor minimizes that deference to foreign judgments constructs some of the bedrocks of U.S. foreign relations and in which the United States has a strong interest in maintaining. This approach mediates the relationship between the U.S. legal system and those of other nations. They are intended to have a mutually reciprocal, equitable and protective affect: to limit the jurisdiction of American courts and to shield governments, including the United States, as defendants in some circumstances. *See International Comity in American Law*, Columbia Law Review, Volume 115, No. 8, page, by William S. Dodge.

To the extent that the Court accepts Professor Bermann's expert testimony on this complex jurisdictional issue, Moldova reserves its right to submit rebuttal testimony and otherwise protects its rights.

### B. Foreign Courts Have Competence to Address ECT Matters

The U.S. Supreme Court has held that a decision of a foreign jurisdiction's highest court as to the meaning of that state's law is binding on federal courts. *See Animal Sci. Prods. v. Hebei Welcome Pharm. Co.,* 138 S. Ct. 1865, 1874 (2018). The *Blasket* court more precisely held that the decisions of the CJEU are "binding on federal courts," "conclusive as to the meaning of EU law," and "dispositive" as to the question of the validity of an … arbitration agreement. *Blasket Renewable Investments, LLC,* 2023 WL 2682013, at page 8-9.

This Court correctly recognized that by executing the ECT, Moldova and Stileks have agreed that the ECT governs their relationship and specifically the questions of arbitrability:

> Petitioner and Moldova therefore consented to **allow the arbitral tribunal to decide questions of arbitrability**—including whether Energoalliance had an "investment" within the meaning of the ECT as is required for jurisdiction under the treaty. [ECF No. 60, page 21].

Articles 26 of the ECT further outlines the dispute resolution forums in which the ECT parties can avail themselves. Petitioner has agreed that foreign courts are the competent jurisdictions to address their disputes and *it commenced action* in these forums. It commenced collection action in Moldova [ECF No. 131, page 2]; it lodged an arbitration asserting that "Moldova breached its obligations of fair and equitable treatment of Energoalliance's investment in violation of the ECT, under the rules of arbitration of the UNCITRAL Rules [*Id*.]; Energoalliance appealed the Paris Court of Appeals Aril 12, 2016 decision voiding the Award before the Cour de Cassation [*Id.* at page 3] and it " intends to appeal" [ECF No. 131, page 22].

Stilkes has adhered to the foreign courts, per its obligation of the ECT and surrendered its arbitrability dispute before the tribunal and the French Courts. Beyond this,  US law dictates that   6

the Paris Court of Appeals is premised upon the CJEU, the Paris Court of Appeals decision and the CJEU are dispositive and binding on this Court. *See Blasket,* 2023 WL 2682013, at page 8-9. If this Court permits the Judgments to stand, it (a) would be in contravention and an invalidation of a foreign courts' competence, (b) abhor Stileks' and Moldova's agreement that the French courts have jurisdiction over the arbitrability matter and (c) undermine the notion of comity.

### C. Petitioner and This Court Have Relied Upon The Principles Of International Comity From The Commencement Of This Litigation

Petitioner impenitently argues that this Court should ignore the very principles of comity upon which it, and this Court, have relied upon since the commencement of this case. In effect, Stilkes wants to have its cake and eat it too.

Both Petitioner and this Court gave deference to foreign tribunals' jurisdiction and competence relating to the jurisdictional issues affecting this case. Applying international comity this Court stayed the case on April 22, 2016 awaiting the decision from the Paris Court of Appeals. On July 21, 2016, Energoaliance, via current counsel of record, requested an extension of the stay this Court granted earlier, awaiting the Paris Court of Appeals ruling. [ECF No. 24]. On June 30, 2017, Petitioner, LLC Komstroy again requested a stay pending the ruling of the Cour de Cassation on the jurisdictional issue [ECF No. 29]. On July 5, 2017, this Court recognized the importance of the foreign tribunal's ruling and granted Petitioner's stay. On August 15, 2018 after a favorable result from the Cour de Cassation, Petitioner motion this court to lift the stay. [ECF No. 33] On November 13, 2018, this Court lifted the stay of these proceedings *as a result of* the ruling Cour de Cassation ruling. [ECF No. 42].

As noted above, both this Court and Petitioner granted comity to the French courts because they are the appropriate jurisdictional competence on the arbitrability issue.

7

II. **The Court Should Grant Relief Pursuant To Rule 60(b)(5)Because The Arbitral Award Upon Which The Court Based Its Jurisdiction Has Been Voided**

The Paris Court of Appeals Decision not only voided the Award, but it also unequivocally denounced this Court's subject matter jurisdiction. This places Moldova's argument squarely within the ambit of Rule 60(b)(5), which authorizes relief from any judgment based on any earlier judgment that has been reversed or vacated. *See, e.g., Jackson v. Jackson*, 276 F.2d 501.

III. **Stileks Can't Avail Itself of the Extraordinary Exception Under Rule 60(b)(6) to Relitigate The Merits of the Award**

Petitioner's push for denying this Motion is motivated by an inappropriate maneuver to have its lost case heard in the US Courts.

> If the judgment of this Court is vacated, Petitioner will have no forum in which to bring its claim. It will not be able to go back to the courts of Moldova in light of Moldova's previous attempts to prevent the enforcement, as the arbitral tribunal concluded. [ECT No. 131, page 22].

This Court does not have the competence to litigate the merits of the Award. *See* Marike R P Paulsson, *The 1958 New York Convention in Action* (2016), p. 157); *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799-800 (9th Cir. 2004); *Seung Woo Lee v. Imaging3, Inc.*, 283 F. App'x 490, 493 (9th Cir. 2008). A review of the merits of an arbitral award would run afoul and is incompatible with the jurisdiction of arbitral tribunals. *See* Dennis Solomon, in Stephan Balthasar (ed.), *International Commercial Arbitration* (2nd edition, 2021), chap B, para. 177.

Further, "[the] arbitration decision can have res judicata or collateral estoppel effect[.]" *CD. Anderson, Co., v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987) (citation and alteration omitted). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980),  8

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739-40 (D.C. Cir. 1995) (the law of the case doctrine bars courts from revisiting issues that were decided "explicitly or by necessary implication" in a prior appeal); *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (stating that under the law-of-the-case doctrine, "the same issue presented a second time in the same case in the same court should lead to the same result") (emphasis in original).

Petitioner has fully and fairly litigated this issue not only in Moldova, but before the CJEU and several courts, including the highest court in France since 2002! It now seeks to use the US forum to relitigate the entire dispute with Moldova. It is not only contrary to current law, but astonishing that Petitioner seeks to disturb a result with which it is unhappy. *See China Nat'l Metal Prods.,* 379 F.3d at 799-800, *Seung Woo Lee,* 283 F. App'x at 493.

But if qualifying exceptional circumstances ever exist, it exist here, where there has been a change in controlling law and in circumstance.  More basically, this case presents a choice: exercise jurisdiction involving a sovereign where there is no legal basis for doing so, or grant relief from the Judgments.  That choice should be a simple one.  Not one, but two courts—the Paris Court of Appeals and the CJEU- declared the Award void based on lack of jurisdiction.

More broadly, the Paris Decision is not the type of run-of-the-mill change in the law that courts have determined to be non-extraordinary. To the contrary, it dramatically altered the landscape of the dispute (correcting an erroneous interpretation of the ECT) by upending the "legal core" of this court's jurisdiction.  *Bynoe v. Baca*, 966 F.3d 972, 988 (9th Cir. 2020).

9

## IV.     CONCLUSION

For all the reasons set out above, the Republic of Moldova respectfully requests that the Court grant it relief from all three Judgments pursuant to Rules 60(b)(4)-(6).

By: /s/ Ioana Salajanu
Ioana Salajanu

*Attorney for the Republic of Moldova*

Ioana Salajanu
SLV Legal
1 East Erie Street, Suite 425
Chicago, IL 60611
Telephone: (773) 875-5438
ioana.salajanu@slvlegal.com

October 9, 2023

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing REPUBLIC OF MOLDOVA'S REPLY MEMORANDUM OF SUPPORT OF ITS MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(4)(5)AND (6) was served via the ECF System to all counsel of record on October 9, 2023:

> Mr. Gene M. Burd
> FISHER BROYLES LLP
> 1200 G Street, NW Suite 800
> Washington, DC 20005
> Tel: 202-750-0529
> Email: gene.burd@fisherbroyles.com

/s/ Ioana Salajanu
Ioana Salajanu
SLV Legal
1 E. Erie, Suite 525
Chicago, IL 60611
Telephone: (773) 875-5438
Ioana.Salajanu@slvlegal.com

*Attorneys for Republic of Moldova*