**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LLC SPC STILEKS,

                Petitioner,

         - against –

THE REPUBLIC OF MOLDOVA,

                Respondent.

Civil Action No. 17 CV 2332

**LEGAL OPINION OF IOANA KNOLL-TUDOR IN SUPPORT OF THE REPUBLIC OF MOLDOVA'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(4), (5), AND (6)**

I**, IOANA KNOLL-TUDOR**, registered with the Paris and Madrid legal bars, a partner at Addleshaw Goddard LLP, and being duly sworn, deposes and states:

1. This legal opinion is made based upon my professional qualifications and experience and, if sworn as a witness, I could and would competently testify to the statements contained herein under the penalties of perjury.

## PROFESSIONAL EXPERIENCE

2. I was admitted to practice law as of February 2007 and have been practicing for more than sixteen (16) years.

3. I am in good standing with the Paris bar. *See* a true and accurate copy of the certificate of good standing attached hereto as Exhibit 1.

4. I am also in good standing with the Madrid bar. *See* a true and accurate copy of the certificate of good standing attached hereto as Exhibit 2.

5. My legal representation involves (i) arbitration proceedings administered by various arbitral institutions, among which the International Centre for the Settlement of Investment Disputes ("ICSID"), the International Chamber of Commerce ("ICC"), the Stockholm Chamber of Commerce ("SCC"), Vienna International Arbitration Centre ("VIAC"), etc., (ii) litigation procedures related to underlying arbitrations before French courts and (iii) litigation involving European Union ("EU") legislation, directives, orders, opinions, ordinances, involving litigation at the Court of Justice of the European Union ("CJEU"); Treaty on European Union ("TEU"), Treaty on the Functioning of the European Union ("TFEU"). *See* a true and accurate copy of my CV attached hereto as Exhibit 3.

6. Besides my work as counsel, I often sit as arbitrator in commercial and investment-based procedures.

## SCOPE OF LEGAL OPINION

7. I was asked by counsel for the Republic of Moldova, Ms. Ioana Salajanu, to issue a legal opinion on the following question:

   "Whether the Court of Cassation would be bound by the Court of Justice of the European Union's interpretation of the Energy Charter Treaty in any future appeal from the Paris Court of Appeal's decision vacating the arbitral award?" ("Question")

8. In responding to the Question, I have relied upon the applicable French and EU legal frameworks, both statutory and jurisprudential.

9. My professional experience dictates that to properly answer to the Question necessitates a two-part analysis: (a) what is the role and function of the French *Cour de cassation* ("Court of Cassation") and (b) whether French courts, including the Court of Cassation, are bound by CJEU's judgments rendered through preliminary rulings in response to questions of interpretation of EU law referred to the CJEU by the French judge.

10. I was not involved in any of the proceedings in this case.

11. I am not aware of any facts that would make the issuance of such an opinion unreasonable.

12. The opinion outlined herein, is limited to the laws in existence as of the date of this opinion, and not for any subsequent time.

13. I, therefore, respectfully submit this legal opinion responding to the Question as set forth below along with the referenced and incorporated exhibits herein.

## LEGAL OPINION

### I. The Role of the Court of Cassation Is Solely to Review the Correct Application of the Law by the French Courts of Appeal, Not to Reassess the Case on the Merits

14. In order to answer the Question, one must first understand the role of the Court of Cassation in the French legal system.

15. The mandate of the Court of Cassation is to determine whether the judgments of the Courts of Appeal are in-conformity with procedural rules and / or are delivered based on the correct application of the French and EU law. *See* a true and accurate copy of Article 604 of the French Code of Civil Procedure attached hereto as Exhibit 4.

16. Under the French legal system, parties whose claims have been dismissed by a court of appeal, including the Paris Court of Appeal, may challenge that judgment by filing a specific recourse, *pourvoi en cassation,* before the Court of Cassation – the highest court in France for civil and criminal matters.

17. Article 604 of the French Code of Civil Procedure, applicable to determine the object of the cassation recourse clearly states that the cassation recourse "*shall tend to ask the Court of Cassation to quash the nonconformity of the judgment to the rules of law*". *See* Exhibit 4 supra.

18. The grounds for bringing a *pourvoi en cassation* before the Court of Cassation are therefore limited to the Courts of Appeal's potential incorrect application of French law, EU law, or non-compliance with procedural rules.

19. Therefore, the Court of Cassation's review is limited to determining whether the Courts of Appeal erred in their application of the law and does not extend to reviewing the merits of the underlying case. The Court of Cassation is not another level of jurisdiction that re-

3

evaluates the facts or the interpretation on the merits made by lower courts.

20. The Court of Cassation, therefore, does not review whether the Paris Courts of Appeal made the correct decision or the correct interpretation on the merits of a case.

## II. Whether French Courts are bound by CJEU's judgments rendered through preliminary rulings in response to questions of interpretation of EU law referred by the French judge

21. Understanding the role of the Court of Cassation, we move to the second prong of the analysis in answering the Question: whether French courts are bound by the CJEU judgments rendered via preliminary rulings.

22. The answer is in the affirmative.

23. The French judge, whether within the Paris Court of Appeal, the Court of Cassation or any other French court, is bound by the CJEU judgments rendered through preliminary rulings concerning specific questions of EU law interpretation referred to the CJEU by a French judge.

24. This answer stems from the principle of supremacy of EU law over the national laws of the EU Member States – also known in French as *primauté du droit européen* – a fundamental principle of EU law.

25. While not explicitly enshrined in the EU treaties, this principle was established by the CJEU in the landmark case *Costa v. ENEL* (CJEU, 15 July 1964, *Costa v. ENEL*, C/6-64). *See* a true and accurate copy of the CJEU, 15 July 1964 ruling in *Costa v. ENEL,* C/6-64, pp. 593-594 attached hereto as Exhibit 5.

> *"3. By contrast with ordinary international treaties, the EEC Treaty has created its own legal system which, on the entry into force of the Treaty, became an integral part of the legal systems of the Member States and which their courts are bound to apply.*
>
> *By creating a Community of unlimited duration, having its own institutions, its own personality, its*

4

> *own legal capacity and capacity of representation on the international plane and, more particularly, real powers stemming from a limitation of sovereignty or a transfer of powers from the States to the Community, the Member States have limited their sovereign rights, albeit within limited fields, and have thus created a body of law which binds both their nationals and themselves.*
>
> *The integration into the laws of each Member State of provisions which derive from the Community and more generally the terms and the spirit of the Treaty, make it impossible for the States, as a corollary, to accord precedence to a unilateral and subsequent measure over a legal system accepted by them on a basis of reciprocity.*
>
> *[…] It follows from all these observations that the law stemming from the Treaty, an independent source of law, could not, because of its special and original nature, be overridden by domestic legal provisions, however framed, without being deprived of its character as Community law and without the legal basis of the Community itself being called into question.*

26. This supremacy principle holds that EU law takes precedence over national laws of EU Member States.

27. In France, a Member State of the EU since 1958, the principle of supremacy of EU law is recognized and given effect through constitutional provisions and applied by French courts.

28. Article 55 of the French Constitution, in force since 1958, provides to that effect that international treaties or agreements duly ratified or approved have higher authority than national laws, subject to the principle of reciprocity, i.e. their application by the other party:

> "*Treaties or agreements duly ratified or approved shall, upon publication, prevail over Acts of Parliament, subject, with respect to each agreement or treaty, to its application by the other party.*"
>
> *See* a true and accurate copy of Article 55 of the French Constitution attached hereto as Exhibit 6.

29. This constitutional provision establishes the supremacy of EU law over national laws.

30. The Council of State *(Conseil d'État)*, the highest administrative court in France, confirmed this principle of supremacy of EU law in its *Nicolo* judgment rendered in 1989, which held that it is the responsibility of administrative courts to verify that national laws comply with international treaties, including EU law.

> "*Considering that, under the terms of art. 227-1 of the EEC Treaty: "This Treaty shall apply…to*

5

>> *the French Republic'"*
>
> *See* a true and accurate copy of Conseil d'État, Assemblée, 20 October 1989, *Nicolo*. Cite full case attached hereto as Exhibit 7.

31. The principle of supremacy of EU law in France is further reinforced by the binding nature of CJEU judgments, as the CJEU has consistently held that its judgments have binding effect on all courts of its Member States, including French courts.

   > *"It follows that the purpose of a preliminary ruling is to decide a question of law and that that ruling is binding on the national court as to the interpretation of the Community provisions and acts in question."*
   >
   > *See* a true and accurate copy of CJEU, 3 February 1977, *Benedetti v. Munari*, C/52-76, §26 attached hereto as Exhibit 8;
   >
   > *"It follows that a judgment in which the Court gives a preliminary ruling on the interpretation or validity of an act of a Community institution conclusively determines a question or questions of Community law and is binding on the national court for the purposes of the decision to be given by it in the main proceedings."*
   >
   > *See* a true and accurate copy of the ruling from CJEU, Order of 5 March 1986 *Wünsche Handelsgesellschaft*, C/69-85, §13 attached hereto as Exhibit 9;
   >
   > *"It is also settled case-law that a judgment in which the Court gives a preliminary ruling is binding on the national court for the purposes of the decision to be given in the main proceedings (see in particular Case 52/76 Benedetti v Munari [1977] ECR 163, paragraph 26, and the order in Case 69/85 Wünsche Handelsgesellschaft [1986] ECR 947, paragraph 13)."*
   >
   > *See* a true and accurate copy of the ruling from CJEU, 14 December 2000, *Fazenda Pública*, C-446/98, §49 attached hereto as Exhibit 10.

32. The Paris Court of Appeal relied upon this supremacy principle in its *Komstroy* judgment dated 10 January 2023:

   > *"53. It follows from the provisions of Article 91 of the procedural regulation of the Court of Justice of the European Union of September 25, 2012, that the judgments rendered by this Court are binding from the day of their pronouncement. The judgment rendered by preliminary ruling binds the national judge for the resolution of the dispute to the principal as to the interpretation of the acts it concerns; it is mandatory for the referring court (ECJ, Feb. 3, 1977, case 52/76, Benedetti, Rec. ECJ 1977, p. 163; ECJ, ord., March 5, 1986, case 69/85, Wünsche: Rec. ECJ 1986, p. 946; ECJ, June 11, 1987, case 14/86, Pretore di Salo: Rec. CJEC 1987,*

*p. 2545. See ECF No. 113-1 at ¶53.*

33. The CJEU has indeed established that the supremacy of EU law is absolute, and that its judgments are binding on all courts of Member States. In the case *Internationale Handelsgesellschaft* (CJEU, 17 December 1970, C/11-70), the CJEU emphasized that the primacy of EU law extends to all European acts with binding force, irrespective of their nature, including constitutional acts.

> *"3 Recourse to the legal rules or concepts of national law in order to judge the validity of measures adopted by the institutions of the Community would have an adverse effect on the uniformity and efficacy of Community law. The validity of such measures can only be judged in the light of Community law. In fact, the law stemming from the Treaty, an independent source of law, cannot because of its very nature be overridden by rules of national law, however framed, without being deprived of its character as Community law and without the legal basis of the Community itself being called in question. Therefore the validity of a Community measure or its effect within a Member State cannot be affected by allegations that it runs counter to either fundamental rights as formulated by the constitution of that State or the principles of a national constitutional structure."*

*See* a true and accurate copy of CJEU, 17 December 1970, *Internationale Handelsgesellschaft*, C/11-70, §3 attached hereto as Exhibit 11.

34. As explained by the CJEU more recently, in its press release No 58/20 issued on 8 May 2020, the rationale behind it is that the binding effect of CJEU judgments ensures the uniform application of EU law throughout the EU Member States.

> *"In general, it is recalled that the Court of Justice has consistently held that a judgment in which the Court gives a preliminary ruling is binding on the national court for the purposes of the decision to be given in the main proceedings. In order to ensure that EU law is applied uniformly, the Court of Justice alone – which was created for that purpose by the Member States – has jurisdiction to rule that an act of an EU institution is contrary to EU law."*

*See* a true and accurate copy of CJEU press release No. 58/20 : CJEU Press Release No 58/20 following the judgment of the German Constitutional Court of 5 May 2020 attached hereto as Exhibit 12.

35. CJEU judgments are therefore not only binding but also enforceable on the territories of EU Member States. This means that national courts, including French courts, are obliged to apply and enforce the CJEU's interpretation of EU law.

36. This binding effect applies in particular to preliminary rulings rendered in response to

7

questions of interpretation of EU law referred by national judges to the CJEU.

37. This was precisely the nature of the Paris Court of Appeal case, where the appellate court judge asked the CJEU for an interpretation of EU law. ECF No. 113-1, ¶ ¶ 49, 50.

38. When French judges face a question of interpretation of EU law, they may refer the question to the CJEU for a preliminary ruling. Indeed, in accordance with Article 267 TFEU, the CJEU has jurisdiction to interpret the acts of the institutions, bodies, offices or agencies of the EU. *See* ECF No. 92-1 at page 4.

39. Preliminary rulings rendered by the CJEU in response to such requests are binding both on the referring court and on all national courts in the EU Member States.

40. This ensures consistency and uniformity in the application of EU law by French courts and all other EU Member States's courts.

41. Articles 217 and 218 TFEU gives the CJEU jurisdiction to give a preliminary ruling on the interpretation of that agreement (judgments of 30 April 1974, *Haegeman*, 181/73, EU:C:1974:41, ¶ ¶ 3 to 6; of 8 March 2011, *Lesoochranárske zoskupenie*, C-240/09, EU:C:2011:125, ¶ 30; and of 22 November 2017, *Aebtri*, C-224/16, EU:C:2017:880, ¶ 50. *See Id.*

42. Treaty of Lisbon provides the CJEU with exclusive competence over EU matter, as regards foreign direct investment, pursuant to Article 207 TFEU and, as regards investments that are not direct, it has shared competence (Opinion 2/15 *(EU-Singapore Free Trade Agreement)*, of 16 May 2017, EU:C:2017:376, paragraphs 82, 238 and 243). *See Id.*

43. Therefore, the Court of Cassation is bound by the supremacy principle providing that (i) European law takes precedence on national laws of EU Member States and (ii) CJEU's preliminary rulings are binding on any French court and the respective judges of that court

since their object is the interpretation of EU law, for which the CJEU is the only competent jurisdiction.

Dated: December 19, 2023

Ioana K. Tudor

Ioana Knoll-Tudor