JUDGMENT OF 3. 2. 1977 — CASE 52/76

In Case 52/76

Reference to the Court under Article 177 of the EEC Treaty by the Pretura di Cittadella for a preliminary ruling in the action pending before that Court between

LUIGI BENEDETTI

and

MUNARI F.LLI S.A.S.

on the interpretation of the provisions of Regulations No 120/67/EEC of the Council of 13 June 1967 on the common organization of the market in cereals (OJ English Special Edition 1967, p. 33), No 132/67/EEC of the Council of 13 June 1967 laying down general rules for intervention on the market in cereals (OJ English Special Edition 1967, p. 73) and No 376/70/EEC of the Commission of 27 February 1970 laying down the procedure and conditions for the disposal of cereals held by intervention agencies (OJ English Special Edition 1970 (I), p. 126).


THE COURT

composed of: H. Kutscher, President, A. M. Donner and P. Pescatore, Presidents of Chambers, J. Mertens de Wilmars, M. Sørensen, Lord Mackenzie Stuart, A. O'Keeffe, G. Bosco and A. Touffait, Judges,

Advocate-General: G. Reischl
Registrar: A. Van Houtte

gives the following


## JUDGMENT


## Facts

The facts of the case, the course of the procedure and the observations submitted under Article 20 of the Protocol on the Statute of the Court of Justice of the EEC may be summarized as follows:

EXHIBIT 8

JUDGMENT OF 3. 2. 1977 — CASE 52/76

upon the prohibition laid down by Article 92 (1) and the derogation from that prohibition provided in Article 92 (2).

The fourth and fifth questions

20  As to these questions, which are summarized above, neither the questions themselves nor the documents on the case enable it to be ascertained whether the undertaking referred to in these questions is a public undertaking, within the meaning of Article 90 (1) of the Treaty, or an undertaking entrusted with the operation of services of general economic interest, within the meaning of Article 90 (2).

21  However, this distinction is essential for the purpose of assessing the extent to which the rules of the Treaty on competition are applicable.

22  Owing to this lack of precision, these questions cannot effectively be answered.

The sixth question

23  Since this question is subject to questions one and two being answered in the negative and questions three, four and five in the affirmative, it has by reason of the foregoing considerations lost its purpose.

The seventh question

24  This question asks what force the interpretation placed by the Court of Justice on Community law has for the court dealing with the substance of the case, and whether the 'ruling' of the Court of Justice is binding on that court in the same way as that court is bound by a 'point of law' laid down by the Corte di Cassazione.

25  Within the framework of proceedings under Article 177, it is not for the Court of Justice to interpret national law and assess its effects. Therefore, within that framework, it cannot make a comparison of any kind whatsoever between the effects of the decisions of the national courts and the effects of its own decisions.

BENEDETTI v MUNARI

26  Under Article 177 the Court of Justice has jurisdiction to 'give (...) rulings' concerning the interpretation 'of this Treaty' and that 'of acts of the institutions of the Community'. ==It follows that the purpose of a preliminary ruling is to decide a question of law and that that ruling is binding on the national court as to the interpretation of the Community provisions and acts in question.==

27  Therefore the question referred should be answered in those terms.

Costs

28  The costs incurred by the Government of the Italian Republic and by the Commission of the European Communities, which have submitted observations to the Court, are not recoverable.

As these proceedings are, in so far as the parties to the main action are concerned, in the nature of a step in the action pending before the national court, costs are a matter for that court.

On those grounds,

THE COURT

in answer to the questions referred to it by the Pretura di Cittadella by an order of 27 April 1976, hereby rules:

1. The provisions of Regulation No 120/67 of 13 June 1967 on the common organization of the market in cereals must be interpreted as meaning that the action of a Member State in purchasing wheat on the world market and subsequently reselling it on the Community market at a lower price than the target price is incompatible with the common organization of the market.

2. In providing that any aid granted by a Member State or through State resources shall be incompatible with the common market, Article 92 (1) specifies that this prohibition applies only 'in so far as it (the aid) affects trade between Member States' and save as otherwise provided in the Treaty, in particular in the exceptions laid down by Article 92 (2).